IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **MATTHEW LEE JOHNSON,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **BRYAN COLLIER,** Executive Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Huntsville, Texas | § | |
| | § | Civil No. 4:25-cv-2066 |
| **ERIC GUERRERO,** Director, Texas | § | |
| Department of Criminal Justice, | § | **\*\*\*CAPITAL CASE\*\*\*** |
| Correctional Institutions | § | |
| Division, Huntsville, Texas | § | |
| | § | |
| **KELLY STRONG,** Warden, Texas | § | |
| Department of Criminal Justice, | § | |
| Huntsville Unit, Huntsville, Texas | § | |
| | § | |
| *Defendants.* | § | |

**COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983**
**Mr. Johnson is scheduled to be executed on May 20, 2025**.

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

*Counsel for Matthew Lee Johnson, Plaintiff*

i

# Table of Contents

Table of Authorities....................................................................... iv

Table of Exhibits……. ................................................................ vii

COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983 ........................ 1

I.    Jurisdiction… ........................................................................ 5

II.   Venue…………. ................................................................... 5

III.  Parties……………. ............................................................. 5

IV.  Procedural background .................................................... 6

V.   Argument…………. ............................................................ 11

    A.  Given the actions of the Attorney General's Office
        prompting the improper issuance of Johnson's
        execution warrant, allowing the state to proceed with
        his execution at this time would constitute a violation
        of the Fourteenth Amendment's Due Process
        Clause……….. ............................................................ 11

        1.  Under Texas law, a trial court may lawfully enter
             an order scheduling an execution in only two
             circumstances: on the motion of the attorney
             properly representing the State or on its own
             motion……. ............................................................ 12

        2.  Other than what occurred in this case, every
             execution order entered in Dallas County during
             Judge Holmes' tenure was issued in response to a
             request from the attorney properly representing

ii

the State……….................................................................. 15

      3.    The Due Process Clause demands a validly issued
           execution order. ……. ................................................. 18

      4.    The Due Process Clause is violated by the
           execution order issued in Johnson's case …… .......... 21

  B.    Allowing Johnson's execution to proceed pursuant to
      the trial court's January 20, 2025, Order would run
      afoul of Johnson's right to Equal Protection…… ................ 23

      1.    The legal standard……........................................... 23

      2.    By circumventing the will of the Dallas County
           electorate, Johnson's right to Equal Protection
           has been violated……. ................................................. 28

VI.   Prayer for Relief ............................................................... 31

Verification…………................................................................. 33

Certificate of Service ............................................................ 34

# Table of Authorities

## Cases

*Atkins v. Virginia,*
    536 U.S. 304 (2002) ................................................................. 24-25

*Carey v. Piphus,*
    435 U.S. 247, 259 (1978) ........................................................... 19

*Estelle v. Gamble,*
    429 U.S. 97, 102 (1976) ............................................................. 24

*Hill v. McDonough,*
    547 U.S. 573 (2006) ................................................................... 4

*Matthews v. Eldridge,*
    424 U.S. 319, 335 (1976) ........................................................... 20

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) ..................................................... 13

*Nelson v. Campbell,*
    541 U.S. 637 (2004) ................................................................... 4

*N.L.R.B. v. Air Control Products of St. Petersburg, Inc.,*
    335 F.2d 245, 249 (5th Cir. 1964) ............................................... 20

*Patterson v. Coughlin,*
    761 F.2d 886, 891 (2d Cir. 1986) ................................................ 20

*Plyler v. Doe,*
    457 U.S. 202 (1982) ................................................................... 27

*Roper v. Simmons,*
    543 U.S. 551 (2005) ................................................................. 24-25

*Saldano v. Roach,*
  363 F.3d 545 (5th Cir. 2004) .......................................................... 13

*State v. Stephens,*
  Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198
  (Tex. Crim. App. Dec. 15, 2021) ................................................... 13

*Trop v. Dulles,*
  356 U.S. 86, 101 (1958). ............................................................... 24

*Vill. of Willowbrook v. Olech,*
  528 U.S. 562, 564 (2000) .............................................................. 27

*Winters v. Bd. of Comm'rs,*
  4 F.3d 848 (10th Cir. 1993) ........................................................... 20

*Zinermon v. Burch,*
  494 U.S. 113, 125 (1990) ......................................................... 19, 21

## Other Authorities

U.S. Const., amend. XIV ...................................................................... 18

Tex. Const. art. V, § 7(b) .................................................................... 23

Tex. Const. art. V, § 21...................................................................... 6, 12

Tex. Gov't Code § 24.508 ................................................................... 23

Tex. Gov't Code § 44.157 ........................................................... 6, 13, 23

Tex. Gov't Code § 44.001 ................................................................... 23

Tex. Code Crim. Proc. art. 2.07................................................................ 14

Tex. Code Crim. Proc. art. 37.071............................................................. 7

## Table of Exhibits

Exhibit 1          January 20, 2025, Execution Order

Exhibit 2          October 2, 2024, letter from AAG to the trial court

Exhibit 3          Johnson's October 3, 2024, response to AAG's letter

Exhibit 4          Email communications made a part of the case records
                   by the trial court

Exhibit 5          April 7, 2025, email from Presiding Judge Riley to
                   Counsel

Exhibit 6          April 14, 2025, Motion for Leave to File Petition for
                   Writ of Mandamus

Exhibit 7          Proposed Petition for Writ of Mandamus

Exhibit 8          April 28 postcard from CCA denying leave to file

Exhibit 9          Notices of Appearance filed by an AAG in *Ex parte
                   Lewis*, No. WR-92,744-01; *Lewis v. State*, No. AP-
                   77,086; *Falk v. State*, No. AP-77,071; and *Hartfield v.
                   State*, No. 13-15-00428-CR.

Exhibit 10         Relevant documents from the following proceedings:
                   *State v. Murphy*, No. F-00-02424 (194th Dist. Ct.,
                   Dallas County, Tex. 2023); *State v. Ruiz*, No. F-07-
                   50318 (194th Dist. Ct., Dallas County, Tex. 2022);
                   *State v. Ochoa*, No. F-02-53582 (194th Dist. Ct., Dallas
                   County, Tex. 2019); *State v. Sparks*, No. F-08-01020
                   (Criminal Dist. Ct. No. 3, Dallas County, Tex. 2019);
                   *State v. Braziel*, No. F-01-40043 (282nd Dist. Ct.,
                   Dallas County, Tex. 2018); *State v. Garcia*, No. F-01-

00325 (283rd Dist. Ct., Dallas County, Tex. 2018); *State v. Battaglia*, No. F-01-52160 (Criminal Dist. Ct. No. 1, Dallas County, Tex. 2017); *State v. Rayford*, No. F-00-01529 (Criminal Dist. Ct. No. 1, Dallas County, Tex. 2017); *State v. Edwards*, No. F-02-15086 (195th Dist. Ct., Dallas County, Tex. 2016); *State v. Escamilla*, No. F-01-59398 (203rd Dist. Ct., Dallas County, Tex. 2015); *State v. Newbury*, No. F-01-00324 (283rd Dist. Ct., Dallas County, Tex. 2011); *State v. Doyle*, No. F-03-45484 (Criminal Dist. Ct. No. 2, Dallas County, Tex. 2013); *State v. Hearn*, No. F-98-46232 (282nd Dist. Ct., Dallas County, Tex. 2012); *State v. Harris*, No. F-00-01010 (282nd Dist. Ct., Dallas County, Tex. 2012); *State v. Hines*, No. F-91-21511 (Criminal Dist. Ct. No. 2, Dallas County, Tex. 2012); *State v. McCarthy*, No. F-97-34795 (292nd Dist. Ct., Dallas County, Tex. 2012); *State v. Feldman*, No. F-99-00068 (Criminal Dist. Ct. No. 3, Dallas County, Tex. 2012); *State v. Newbury*, No. F-01-00324 (283rd Dist. Ct., Dallas County, Tex. 2011); *State v. Bradford*, No. F-89-76496 (Criminal Dist. Ct. No. 4, Dallas County, Tex. 2011); *State v. Stroman*, No. F-01-40949 (292nd Dist. Ct., Dallas County, Tex. 2011); *State v. Rivas*, No. F-01-00323 (283rd Dist. Ct., Dallas County, Tex. 2011); *State v. Hernandez*, No. F-02-00777 (204th Dist. Ct., Dallas County, Tex. 2011).

Exhibit 11    June 20, 2022, letter from AG to trial court about scheduling Gary Green's execution and July 26, 2022, order scheduling Green's execution

Exhibit 12    Relevant documents from the following proceedings: *State v. Murphy*, No. F-01-00328 (283rd Dist. Ct., Dallas County, Tex.); *State v. Halprin*, No. F-01-00327 (283rd Dist. Ct., Dallas County, Tex. 2019); *State v. Long*, No. F-05-52918 (Criminal Dist. Ct. No. 2, Dallas

County, Tex. 2016); *State v. Robertson*, No. F-89-85961
(Criminal Dist. Ct. No. 5, Dallas County, Tex.).

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **MATTHEW LEE JOHNSON** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **BRYAN COLLIER,** Executive Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Huntsville, Texas | § | |
| | § | Civil No. 4:25-cv-2066 |
| **ERIC GUERRERO,** Director, Texas | § | |
| Department of Criminal Justice, | § | **\*\*\*CAPITAL CASE\*\*\*** |
| Correctional Institutions | § | |
| Division, Huntsville, Texas | § | |
| | § | |
| **KELLY STRONG,** Warden, Texas | § | |
| Department of Criminal Justice, | § | |
| Huntsville Unit, Huntsville, Texas | § | |
| *Defendants.* | § | |

## COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983

If Plaintiff Matthew Lee Johnson is executed on May 20, 2025, it

will be under conditions that violate the Due Process and Equal

Protection Clauses of the Fourteenth Amendment.[1] Specifically, Texas

statutory law makes clear that an execution date may only be set by a

---

[1] A copy of the trial court's January 20, 2025, order setting Johnson's
execution for May 20, 2025, is included in this Complaint's Appendix as Exhibit 1.

1

trial court either sua sponte, or in response to a motion filed by the
office which properly represents the State in that proceeding. Texas law
makes clear that office is either the District Attorney's office or another
office or attorney acting pursuant to a request from the District
Attorney's office. In addition to being required by Texas statute, as
made clear in the argument section below, that is the process that was
followed for every order scheduling an execution entered in Dallas
County since 2011, except for the order scheduling Johnson to be
executed on May 20.[2]

In this case, the trial court entered the order scheduling Johnson
to be executed in response to a letter from the Attorney General's office
through which the then-Chief of that office's Criminal Appeals Division
suggested the trial court should enter such an order and proposed
several dates, which he believed would be acceptable for Johnson's
execution. The District Attorney's Office had not made any movement
toward asking for such an order, and there is nothing in the record

---

[2] The circumstances surrounding the issuance of the execution warrant for
Gary Green, who was executed on March 7, 2023, are not entirely clear, and
Counsel are uncertain as to whether the proper procedure was followed in his case.
See *infra* notes 11 and 12.

2

suggesting the District Attorney asked the Attorney General's office to represent the State's interests in this proceeding. As a result, the Attorney General's Office was acting *ultra vires*, and the issuance of the execution warrant occasioned by that *ultra vires* conduct is unlawful.

Just as the Attorney General's office does not have the authority to decide the State should seek death as a punishment at trial, it cannot ask the trial court to schedule the execution of that punishment. Under Texas law, those decisions are reserved for the citizens of the county in which the defendant was tried and sentenced to death as expressed through their local elected official: the district attorney.

Johnson has twice requested to the state courts that he be executed only pursuant to a lawful process. First, Johnson, through Counsel, informed the trial court on multiple occasions before that court entered its order scheduling his execution, that the AAG did not have authority to request an execution order. Second, after the trial court entered its order over Counsel's objections, Johnson, through Counsel, asked the Texas Court of Criminal Appeals ("CCA") to enter an order either ordering the trial court to withdraw its order, or, on its own

3

authority, staying his execution. The CCA denied Johnson's request on April 30.[3] Johnson respectfully requests that this Court provide injunctive relief ensuring that he not be executed in a manner that runs afoul of his rights pursuant to the Due Process and Equal Protection clauses.

Johnson is not asking for relief from his death sentence, but is simply seeking relief from the unconstitutional process which resulted in his execution being scheduled for May 20. A favorable ruling for Johnson in this proceeding would not mean that Texas can never execute him, as the claim does not call into question the validity of his sentence. Johnson simply asks that the warrant ordering his execution be issued in a lawful manner. Therefore, this claim is appropriately raised in a § 1983 action. *See Hill v. McDonough*, 547 U.S. 573, 580 (2006); *Nelson v. Campbell,* 541 U.S. 637, 646-47 (2004). And because the highest state court has refused to issue a ruling on the merits of

---

[3] Specifically, the CCA, without issuing an order, denied Johnson leave to file the mandamus petition by which he sought to have the CCA address the merits of his claims. Accordingly, the State's highest court declined to address the merits of Johnson's claim that his execution warrant is unlawful.

Johnson's claim, intervention by this Court is necessary to preclude the State from carrying out an execution pursuant to an unlawfully issued order.

## I.    Jurisdiction

This court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

## II.    Venue

Venue is proper under 28 U.S.C. § 1391 because Defendants Collier, Guerrero, and Strong maintain offices in Huntsville, Texas, and the unlawful conduct that Johnson complains of will occur in Huntsville. Defendants are being sued in their official capacities.

## III.    Parties

Johnson is currently incarcerated under a sentence of death at the Polunsky Unit of the Texas Department of Criminal Justice in Livingston, Texas. He is scheduled to be executed on May 20, 2025.

Bryan Collier is the executive director of the Texas Department of Criminal Justice ("TDCJ"). He is being sued in his official capacity.

Eric Guerrero is the director of the TDCJ's Correctional

5

Institutions Division. He is being sued in his official capacity. Guerrero is the person charged by the trial court's order to execute the judgment of death against Johnson.

Kelly Strong is the senior warden of the Huntsville Unit, the unit at which TDCJ executes inmates. She is being sued in her official capacity. As the warden of the Huntsville Unit, Strong is the TDCJ official that supervises Texas executions.

## IV.    Procedural background

On October 30, 2013, Matthew Lee Johnson was convicted of capital murder in the 363rd Judicial District in Dallas County. 46 R.R. 69.[4] As required by statute, attorneys from the Dallas County District Attorney's Office represented the State's interest at trial. *See* Tex. Const. art. V, § 21; Tex. Gov't Code § 44.157(a). After the jury answered the special issues submitted to it pursuant to Article 37.071 of the Texas Code of Criminal Procedure, Judge Tracy Holmes set Johnson's

---

[4] Citations to the Reporter's Record of Johnson's 2013 capital murder trial appear herein as [volume number] R.R. [page number].

punishment at death.[5] 53 R.R. 7-8; 14 C.R. 4526. Johnson's conviction

and sentenced were affirmed by the CCA on direct appeal on November

18, 2015. *Johnson v. State*, No. AP-77,030, 2015 WL 7354609 (Tex.

Crim. App. Nov. 18, 2015). By February 20, 2024, Johnson's state and

federal habeas litigation was concluded. *See Ex parte Johnson*, No. WR-

86,571-01 (Tex. Crim. App. Sept. 11, 2019); *Johnson v. Lumpkin*, 144 S.

Ct. 829 (2024).

On October 2, 2024, Edward Marshall, then-Chief of the Criminal

Appeals Division of the Texas Attorney General's Office filed a letter in

the trial court, in which the Marshall: 1) suggested the trial court

should schedule Mr. Johnson to be executed on any of seven dates the

---

[5] The first question, which all juries charged with determining whether a defendant should be sentenced to death must answer is "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.701, § (2)(b)(1). If, and only if, the jurors unanimously answer "yes" to the first question (commonly referred to as the "future dangerousness" question), do they then proceed to answer the second question, which is "[w]hether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed." *Id.* art. 37.071, § 2(e)(1). If the jurors unanimously answer the mitigation question "no," then the defendant is sentenced to death by operation of law. *Id.* art. 37.071, § 2(g).

Attorney General's Office indicated were "currently available"; and 2) offered to represent the State in any subsequent litigation should the trial court heed his suggestion. Exhibit 2 (October 2, 2024, letter from AAG to trial court). On October 3, 2024, Undersigned Counsel filed a response urging the trial court take no action in response to the Attorney General's Office's attempted intervention and refrain from entering an order scheduling Johnson's execution. Exhibit 3 (Johnson 's October 3, 2024, response to the AAG's letter).

On October 30, 2024, Judge Holmes, via email, "acknowledge[d] receipt of the Attorney General's letter regarding scheduling the execution date in the State v. Matthew Johnson," and announced the court's intent to move forward in selecting a date for execution. Exhibit 4 (Email communications made a part of the case records by the trial court) at 4.[6] Judge Holmes wrote: "The proposed dates suggested by the

---

[6] On March 10, 2025, Counsel sent a request for email communications either to or from Judge Holmes related to the scheduling of Mr. Johnson's execution, including communications between the court and the AG's office, the DA's office, and the Chief Judicial Staff Counsel to Presiding Criminal District Judge Audra Riley. On March 27, 2025, in response to an email from Undersigned Counsel requesting an update on the status of the request, Judge Riley informed Counsel that the request had been received and that the court was working to complete the request. Apparently, on March 28, 2025, Judge Holmes ordered the clerk to file email communications between the court and the parties and the Attorney

Attorney General's office have been noted, and I invite both parties to provide any further input on these or alternative dates before the Court makes its final determination." *Id.* The court indicated the parties should respond by November 30. *Id.*

On November 22, 2024, Counsel for Defendants (then-deputy and now-Chief of the Criminal Appeals Division of the Attorney General's Office) replied, offering her feedback on the suggested execution dates. Exhibit 4 at 7. On November 25, the trial court replied to the AAG (without copying Counsel or anyone from the DA's office on the email). *Id.* On that date, the trial court informed the AAG that she had not yet "heard from the parties," but that she intended to schedule Mr. Johnson to be executed on April 8 if the parties did not respond. *Id.*

Undersigned Counsel responded on November 30 and informed the court that, consistent with Johnson's October 3 response, Counsel

_____

General's office as case records. Counsel has included the court's March 28 Order along with the emails filed pursuant to the Order as Exhibit 4.

Counsel received these documents on April 7, 2025, when Presiding Judge Riley emailed them to Counsel. The text of Judge Riley's email informed Counsel that it is her belief that any and all email communications between the trial court and Chief Judicial Counsel are privileged and undiscoverable pursuant to Rule 12. Counsel have appealed Judge Riley's decision. Judge Riley's April 7, 2025, email to Counsel is included as Exhibit 5.

9

continued to believe the AG's office did not possess the authority to represent the State's interest in requesting an execution date be set and informed the court of their intent to litigate the issue of the Attorney General's intermeddling. Exhibit 4 at 18. Counsel wrote that if the court nevertheless decided to schedule Johnson to be executed pursuant to the AG's letter, of the dates suggested by the AG, they would prefer May 20 to the other suggested dates. *Id.* On January 20, 2025, Judge Holmes scheduled Johnson's execution for May 20, 2025. Exhibit 1.

So that the state courts could first address the Due Process and Equal Protection violations at issue in this Complaint, on April 14, Johnson filed a motion for leave to file a petition for a writ of mandamus in the CCA on April 14. Exhibit 6 (Motion for Leave to File Petition for Writ of Mandamus). In the proposed petition, which Counsel attached as an exhibit to the motion for leave, Counsel argued to the CCA that if that court did not stay Johnson's execution or order the trial court to withdraw the order scheduling Johnson's execution, and instead allowed Johnson's execution to proceed as scheduled on May 20, then the CCA's decision would result in a violation of Johnson's

rights pursuant to the Fourteenth Amendment's Due Process and Equal Protection Clauses. Exhibit 7 (Proposed Petition for Writ of Mandmaus) at 29-39.  On April 28, the CCA denied Johnson leave to file his petition for writ of mandamus. Exhibit 8. Accordingly, after first attempting to give the state an opportunity to address this issue, Johnson now files this Complaint pursuant to 42 U.S.C. § 1983.

## V.    ARGUMENT

### A.    Given the actions of the Attorney General's Office prompting the improper issuance of Johnson's execution warrant, allowing the state to proceed with his execution at this time would constitute a violation of the Fourteenth Amendment's Due Process Clause.

Article 43.141 of the Texas Code of Criminal Procedure specifies the exclusive procedure for scheduling an execution date. The legislative history of article 43.141 contemplates two circumstances under which the process for setting an execution date may be initiated: 1) by motion from the attorney representing the state or 2) by the convicting court acting on its own motion.[7] The execution order issued

---

[7] Bill Analysis on Art. 43.141 as amended by S.B. 1071, 84th Leg., R.S., 2015, created by Senate Research Center and written by Senator Hinojosa on April 1, 2015, provides that section (b-1) of Article 43.141, Code of Criminal Procedure "[r]equires the attorney representing the state to ensure that a copy of the state's

in Johnson's case fails to meet either of these conditions, and the

issuance of an execution warrant in a manner precluded by state law

violated Johnson's right to Due Process of law.

> **1.    Under Texas law, a trial court may lawfully enter an order scheduling an execution in only two circumstances: on the motion of the attorney properly representing the State or on its own motion.**

The Texas Constitution provides that "[t]he County Attorneys

*shall* represent the State in *all* cases in the District and inferior courts

of their respective counties." Tex. Const. art. V, § 21 (emphasis added).

The Texas Legislature has further provided that "[t]he criminal

district attorney of Dallas County . . . has *exclusive* control of criminal

cases and all cases heard on habeas corpus in the courts of Dallas

County," and that "[n]o other person may perform a duty of the criminal

district attorney . . . unless the criminal district attorney and his

---

motion to set an execution date is served on the attorney who represented the condemned person in the most recently concluded stage of a state or federal postconviction proceeding" and that section (b-2) "[r]equires the clerk of the convicting court, if the convicting court intends to set an execution date under this article on its own motion, to provide written notice of that intent" to the parties. Bill Analysis, S.B. 1071, S. Res. Ctr., at 2 (Apr. 1, 2015), https://capitol.texas.gov/tlodocs/84R/analysis/html/SB01071S.htm. As far as Counsel are aware, this bill analysis is the only document in the legislative history of Article 43.141 that suggests the trial court can set a date sua sponte.

assistants are absent from the county or refuse or are unable to perform the duty." Tex. Gov't Code § 44.157 (emphasis added).

Moreover, the Texas Constitution "expressly divides the powers of government into three distinct departments—legislative, executive, and judicial—and prohibits the exercise of any power 'properly attached to either of the others,' unless that power is grounded in a constitutional provision." *State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198, at *3 (Tex. Crim. App. Dec. 15, 2021). It "gives county and district attorneys the 'specific duty' to represent the state in criminal prosecutions." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 326 (5th Cir. 2024). "The Attorney General, as part of the state's executive branch, has no similar, independent power under the state constitution." *Id*.

"Under Texas law, 'either the Attorney General or a county or district attorney may represent the State in a particular situation, but these are the only choices, whichever official represents the State exercises exclusive authority and if services of other lawyers are utilized, they must be 'in subordination' to his authority.'" *Saldano v. Roach*, 363 F.3d 545, 552 (5th Cir. 2004).

13

In this case  (so far as Undersigned Counsel are aware), District Attorney Creuzot has not requested the assistance of the Office of the Attorney General.[8] While the Attorney General has suggested that Creuzot may "choose not to participate" in subsequent litigation in Johnson's case, no provision of Texas constitutional or statutory law permits the appointment of an Attorney Pro Tem, unless the District Attorney is absent or disqualified, in which case the trial court would possess lawful authority appoint an AAG to serve in that capacity. Tex. Code Crim. Proc. art. 2.07(a).[9]

---

[8] Ordinarily, when the Attorney General's Office has been asked by a District Attorney to represent the State's interests in either a direct appeal or state habeas proceeding, the AAG who will represent the State in the proceeding is sworn in as an Assistant District Attorney by the District Attorney and then files a notice of appearance apprising the district court (or this Court) that the AAG is acting as an ADA in the proceeding. See Exhibit 9 (Notices of Appearance filed by an AAG in *Ex parte Lewis*, No. WR-92,744-01; *Lewis v. State*, No. AP-77,086; *Falk v. State*, No. AP-77,071; and *Hartfield v. State*, No. 13-15-00428-CR). In this proceeding, there has been no such filing. Counsel acknowledges that it is possible that either the AG or the DA notified the trial court that the DA asked the AG's office to assist in this case (and perhaps also sent the trial court a copy of any document indicating that an AAG has been deputized by the DA for this purpose) through some informal means, but there is no evidence in the record that such a notification occurred. Moreover, as Judge Riley's April 7 email (which informed Counsel that all the email communications between the trial court and the parties and the AG's office were included in the emails filed on March 28 and included here as Exhibit 4) makes clear, neither the AG's office nor the DA communicated via email to the trial court that the DA had requested intervention by the AG's office in this case.  .

[9] For example, in the case of Jedidiah Murphy, the trial court appointed the AG's office to serve as Attorney Pro Tem because Creuzot asked to be recused. A

14

Mr. Creuzot is neither disqualified nor absent from the jurisdiction. The AG's office nevertheless sent a letter to the trial court effectively moving the court to enter an execution order.  The trial court, in response to the AG's letter, did just that. By so doing, the Attorney General's Office acted beyond its authority and inappropriately interfered with the constitutional powers of the District Attorney of Dallas County.

> **2.    Other than what occurred in this case, every execution order entered in Dallas County during Judge Holmes' tenure was issued in response to a request from the attorney properly representing the State.[10]**

In addition to having authority to set an execution date when asked to do so by the District Attorney (or an attorney acting pursuant to a request from the District Attorney), Article 43.141 might empower the trial court to act on its own motion. *See supra* note 7. However, in neither this case, nor apparently any other case from Dallas County in

_____

copy of the Order appointing the AG's office in Jedidiah Murphy's case is included within Exhibit 10 of this Complaint. See Exhibit 10 at 1-2.

[10] As indicated above (see *supra* note 2), the circumstances surrounding one execution from Dallas County are unclear.

more than a decade, has an execution warrant been issued *sua sponte*

by a trial court acting on its own motion.

Since January 1, 2011, twenty-one individuals who were convicted

of capital murder in Dallas County have been executed.[11] All except for

---

[11] Exhibit 10 of this Complaint's Appendix contains copies of execution orders and requests for such orders from the following twenty-one cases which resulted in execution: *State v. Murphy*, No. F-00-02424 (194th Dist. Ct., Dallas County, Tex. 2023); *State v. Ruiz*, No. F-07-50318 (194th Dist. Ct., Dallas County, Tex. 2022); *State v. Ochoa*, No. F-02-53582 (194th Dist. Ct., Dallas County, Tex. 2019); *State v. Sparks*, No. F-08-01020 (Criminal Dist. Ct. No. 3, Dallas County, Tex. 2019); *State v. Braziel*, No. F-01-40043 (282nd Dist. Ct., Dallas County, Tex. 2018); *State v. Garcia*, No. F-01-00325 (283rd Dist. Ct., Dallas County, Tex. 2018); *State v. Battaglia*, No. F-01-52160 (Criminal Dist. Ct. No. 1, Dallas County, Tex. 2017); *State v. Rayford*, No. F-00-01529 (Criminal Dist. Ct. No. 1, Dallas County, Tex. 2017); *State v. Edwards*, No. F-02-15086 (195th Dist. Ct., Dallas County, Tex. 2016); *State v. Escamilla*, No. F-01-59398 (203rd Dist. Ct., Dallas County, Tex. 2015); *State v. Doyle*, No. F-03-45484 (Criminal Dist. Ct. No. 2, Dallas County, Tex. 2013); *State v. Hearn*, No. F-98-46232 (282nd Dist. Ct., Dallas County, Tex. 2012); *State v. Harris*, No. F-00-01010 (282nd Dist. Ct., Dallas County, Tex. 2012); *State v. Hines*, No. F-91-21511 (Criminal Dist. Ct. No. 2, Dallas County, Tex. 2012); *State v. McCarthy*, No. F-97-34795 (292nd Dist. Ct., Dallas County, Tex. 2012); *State v. Feldman*, No. F-99-00068 (Criminal Dist. Ct. No. 3, Dallas County, Tex. 2012); *State v. Newbury*, No. F-01-00324 (283rd Dist. Ct., Dallas County, Tex. 2011); *State v. Bradford*, No. F-89-76496 (Criminal Dist. Ct. No. 4, Dallas County, Tex. 2011); *State v. Stroman*, No. F-01-40949 (292nd Dist. Ct., Dallas County, Tex. 2011); *State v. Rivas*, No. F-01-00323 (283rd Dist. Ct., Dallas County, Tex. 2011); *State v. Hernandez*, No. F-02-00777 (204th Dist. Ct., Dallas County, Tex. 2011). In each of these cases, the record reflects the request was made by an attorney properly representing the State's interests.

In *State v. Green*, No. F-09-59380-S (282nd Dist. Ct., Dallas County, Tex. 2022), an execution date was set in response to a letter from Mr. Marshall. See Exhibit 11 (June 20, 2022, letter from AG to trial court about scheduling Gary Green's execution and July 26, 2022, order scheduling Green's execution). Mr. Marshall's letter indicates he had been in contact with an ADA about the matter, and that the ADA had asked him to send something similar to the letter he filed to

one of the execution orders which resulted in these thirteen executions

were clearly initiated by a motion or request from the attorney properly

representing the state.[12] Additionally, other execution orders during

this period, which did not ultimately result in an execution for various

reasons, were also the result of a motion or request from the proper

state attorney.[13]

Although under state law the trial court might be allowed to act

on its own motion, the proceedings in this case provide no basis for

concluding that Judge Holmes acted on her own motion, and indeed the

---

the trial court, but there is nothing to suggest Marshall was deputized by Creuzot
or that Creuzot was even aware of Marshall's involvement. Counsel believes Texas
statutory law at least suggests that absent being appointed to serve in a pro tem
capacity, an AAG must be deputized in order to act in a state court criminal
proceeding. *See* Tex. Code Crim. Proc. art. 2.07(a); Tex. Gov't Code § 402.028. The
record is silent, however, as to whether such deputization occurred in Green's case.

[12] As explained above, in the case of Gary Green, Counsel do not know if the
AG's office was appointed by the district court to act as Attorney Pro Tem or if the
DA deputized an AAG to represent the State in the proceeding. Counsel do not
believe that any document reflecting that either of these events occurred was filed
in the case.

[13] See Exhibit 12 in this Petition's Appendix, containing relevant documents
from the following proceedings: *State v. Murphy*, No. F-01-00328 (283rd Dist. Ct.,
Dallas County, Tex.); *State v. Halprin*, No. F-01-00327 (283rd Dist. Ct., Dallas
County, Tex. 2019); *State v. Long*, No. F-05-52918 (Criminal Dist. Ct. No. 2, Dallas
County, Tex. 2016); *State v. Robertson*, No. F-89-85961 (Criminal Dist. Ct. No. 5,
Dallas County, Tex.).

17

history of correspondence between the Attorney General and the trial court, and the trial court's subsequent communications with counsel, make clear the AG initiated the setting of an execution date and effectively moved the trial court to issue such an order. Prior to being contacted by the Attorney General's Office, the trial court neither informed the parties it intended to set an execution date, nor did it indicate it wished to hear from counsel concerning the setting of a date. It is clear from the series of events and communications that the trial court acted in response to a prompt from the Attorney General's Office. Because that office lacked any authority to intervene or participate in this matter, the trial court's action, taken at the urging of that unlawful intrusion, is likewise unlawful.

### 3. The Due Process Clause demands a validly issued execution order.

The Fourteenth Amendment of the United States Constitution commands that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV.

There are "three kinds of § 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth

18

Amendment." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "First, the

Clause incorporates many of the specific protections defined in the Bill

of Rights." *Id*. "Second, the Due Process Clause contains a substantive

component that bars certain arbitrary, wrongful government actions

'regardless of the fairness of the procedures used to implement them.'"

*Id*. Finally, "[t]he Due Process Clause also encompasses a third type of

protection, a guarantee of fair procedure." *Id*. "In procedural due

process claims, the deprivation by state action of a constitutionally

protected interest in 'life, liberty, or property' is not in itself

unconstitutional; what is unconstitutional is the deprivation of such an

interest *without due process of law*." *Id*. "Procedural due process rules

are meant to protect persons not from the deprivation, but from the

mistaken or unjustified deprivation of life, liberty, or property." *Carey v.

Piphus*, 435 U.S. 247, 259 (1978).

"Due process, as [the Supreme] Court often has said, is a flexible

concept that varies with the particular situation." *Zinermon,* 494 U.S.

at 127. The procedural due process analysis typically involves a three-

factor balancing test, evaluating: "First, the private interest that will be

19

affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Moreover, the Due Process Clause requires "regular procedures which the government must follow before it may deprive an individual of life, liberty or property." *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1986). "The execution of those laws and regulations also must conform to due process; otherwise, the due process clause, with its guarantees of regular and predictable procedures, becomes a cipher." *Id.* at 892; *see Winters v. Bd. of Cnty Comm'rs*, 4 F.3d 848, 857 (10th Cir. 1993) ("The importance of following established due process procedures is fundamental"); *N.L.R.B. v. Air Control Products of St. Petersburg, Inc.*, 335 F.2d 245, 249 (5th Cir. 1964) (quoting *Fay v. Douds*, 172 F.2d 720, 725 (2d Cir. 1949) ("the Constitution protects procedural

20

regularity, not as an end in itself, but as a means of defending

substantive interest'");

### 4. The Due Process Clause is violated by the execution order issued in Johnson's case.

Whether considered in isolation or in the broader context of the

execution warrants issued in Dallas County, it is clear that the trial

court acted at the direction of the Attorney General's Office, thus

exceeding its statutory authority under Article 43.141 of the Texas Code

of Criminal Procedure. Carrying out Johnson's execution pursuant to an

unlawful warrant would result in the unconstitutional deprivation of

Johnson's life.

The execution order issued in Johnson's case infringes on the

guarantee of procedural due process, a claim protected by § 1983. *See*

*Zinermon,* 494 U.S. at 127. Importantly, Johnson does not assert that

his Due Process rights are violated by the mere issuance of an execution

order, but rather that an order based on unlawful authority and

improper interference unjustifiably deprives him of his right to a lawful

execution order, thereby violating his Due Process rights. Nothing that

Johnson requests in this Complaint prevents the State, pursuant to a

21

request from its proper representative, from executing Johnson.

Johnson has no means to protect his right to Due Process other than through this action. On April 14, Johnson first gave the state courts an opportunity to address this Due Process violation by filing a motion for leave to file a petition for writ of mandamus, which requested that the State's highest court either order that the trial court recall the unlawfully issued execution warrant or, alternatively, stay Johnson's execution until a lawful warrant could be issued. *See* Exhibit 6; Exhibit 7 at 40. The CCA subsequently denied Johnson leave to file the mandamus. Exhibit 8. By leaving the Due Process violation unresolved, and providing no other means to obtain relief in state court, the State of Texas failed to provide a constitutionally adequate process and made this § 1983 action the only available means for Johnson to preserve his right to Due Process.

This Court should stay Johnson's imminent execution until Johnson has received the Due Process to which he is entitled.

**B.** **Allowing Johnson's execution to proceed pursuant to the trial court's January 20, 2025, Order would run afoul of Johnson's right to Equal Protection.**

**1.** **The legal standard**

Section 44.157 of the Texas Government Code provides the Dallas County Criminal District Attorney has *exclusive* control of criminal cases in the courts of Dallas County and serves as the district attorney of all the district courts in Dallas County. Tex. Gov't Code Ann. § 44.157 (emphasis added). The Dallas County District Attorney is elected by the voters of Dallas County. Tex. Gov't Code § 44.001. District court judges are elected at the district level, and because the 363rd Judicial district is comprised of Dallas County (and no other county), the presiding judge of the 363rd District Court is also elected by the voters of Dallas County. *See* Tex. Const. art. V, § 7(b); Tex. Gov't Code § 24.508. When considered in conjunction with Article 43.141, these statutes and constitutional provisions work to ensure that executions in Dallas County reflect the will of the local electorate, as expressed through officials elected by (and only by) that local electorate.

The Legislature's decision to make district attorneys and district court judges—officials elected at the local level—the sole officers with the authority to initiate the process of setting an execution date has constitutional significance. Specifically, as the Supreme Court has recognized, "The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101 (1958). "The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted). The evolving standards of decency "doctrine takes as foundational the fact that the legal prohibition on what is cruel and unusual shifts over time with societal opinions, meaning some punishments once considered acceptable may become, over time, unconstitutional."[14] In its seminal opinions issued in *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court looked primarily to legislation enacted

---

[14] Douglas Steinman, *The Death of Decency: How a Case About Homelessness Nearly Upended Seventy Years of Eighth Amendment Jurisprudence*, 62 Hous. L. Rev. 673, 681 (2025).

at the state level and local practice in the state courts to ascertain whether society found the execution of two groups of defendants (i.e., those persons who are intellectually disabled and those who were less than eighteen years of age when they committed capital murder, respectively) acceptable. *See Simmons*, 543 U.S. at 564-67 (2005); *Atkins*, 536 U.S. at 313-17 (2002).

To be clear, Johnson is not arguing that he is ineligible for execution. Nevertheless, the important principle expressed in these opinions—a principle that is applicable to Johnson—is that local legislative action is perhaps the primary factor to consider when determining whether a society believes an execution is appropriate. Through the statutory provisions enacted by their elected legislators, Texans have effectively created a system whereby death sentences are permitted, but executions are not carried out unless a local official (whether that by the district attorney or, perhaps, by a district judge acting sua sponte) believes the execution should move forward. Evidence suggests that district attorneys and district judges are influenced by the will of the electorate when it comes to making

25

decisions related to capital punishment, including whether to carry out an execution, and so the actions by these actors is at least responsive to, if not perfectly reflective of, the degree to which the electorate supports an execution.[15] And so when the District Attorney asks the trial court to enter an execution order or the trial court does so sua sponte, that action reflects, in part, that the electorate finds the execution to be permissible at that time. Conversely, when neither the District Attorney nor the trial court makes a move toward scheduling an inmate's execution (as was true for Johnson before the AG's office inserted itself into this proceeding), that fact too, at least in part, reflects that society does not, at that time, believe it would be appropriate to carry out the execution.

---

[15] Lee Kovarsky, *Muscle Memory and the Local Concentration of Capital Punishment*, 66 Duke L.J. 263, 295 (2016) ("localities that produce many death sentences and executions do so" in part "because of heavy political demand"); citing Owen G. Abbe & Paul S. Herrnson, *How Judicial Elections Have Changed*, 85 Judicature 286, 295 (2002) ("Judicial decision-making research shows that in controversial cases, such as those involving capital punishment, elections motivate justices to vote strategically in order to minimize electoral risks.") and David R. Dow, *Why Texas is So Good at the Death Penalty*, Politico (May 15, 2014), https://www.politico.com/magazine/story/2014/05/texas-death-penalty-106736/ ("Texas' execution record is also the result of callow politicians chasing cheap votes by beating the death penalty drum").

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated shall be treated alike" under the law. *Plyler v. Doe*, 457 U.S. 202 (1982). An individual can assert an Equal Protection claim as a "class of one." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As noted above, s*ee supra* note 11, at least twenty of the twenty-one Dallas County executions that have occurred since 2011, proceeded from a procedurally correct process, meaning that the execution did not occur until the electorate, through the actions of its locally elected officials (or attorneys properly appointed by those officials), believed the defendant's execution should be scheduled. As explained below in greater detail, if Johnson's execution is allowed to proceed pursuant to the January 20 Order, he will have been treated differently from these and other similarly situated defendants because he—and perhaps he alone[16] from Dallas County—will have been executed pursuant to action by the Attorney General and not any local official.

---

[16] As noted above, see supra notes 11-12, there is nothing in the record that indicates that the DA's office requested the AG's assistance in asking the trial court to schedule Gary Green's execution, and if the DA's office, in fact, did not request the AG's assistance, then Counsel believe the order that resulted in Green's

2.    **By circumventing the will of the Dallas County electorate, Johnson's right to Equal Protection has been violated.**

The Equal Protection Clause requires Johnson be treated the same as those "similarly situated." In this case, that includes other individuals in Dallas County whose executions have been scheduled (and possibly also carried out) as well as those who are eligible to receive an execution date (because their federal habeas proceedings have concluded), but for whom no order scheduling an execution has been entered.

Dallas County voters elected Judge Holmes in 2006. During her re-election campaign in 2014, an endorsement from the Dallas Morning News seems to indicate that that paper's endorsement was, at least in part, based on the fact that her primary opponent "strongly support[ed] the death penalty."[17] In 2018, Dallas County voters elected District

---

execution was flawed in precisely the same way as the January 20, 2025, order at issue here.

[17] *See Editorial: We recommend Holmes in 363rd primary*, DallasNews.com (Feb. 10, 2014), https://www.dallasnews.com/opinion/editorials/2010/02/01/editorial-we-recommend-holmes-in-363rd-primary/.

Attorney John Creuzot, and since assuming office, he has not sought the death penalty in any new capital murder case.[18] In 2021, Creuzot was a signatory on an open letter to President Biden, urging him to support legislation to end the federal death penalty and to commute the sentences of those on death row.[19] Similarly, in early 2022, Creuzot signed a "Joint Statement From Elected Prosecutors Pledging to Work Towards the Elimination of the Death Penalty."[20] "On the death penalty criticism, [Creuzot has] said an automatic life sentence is a more efficient and cost-effective way to hold people accountable."[21] Knowing

---

[18] Jim Malewitz, *John Creuzot Hasn't Sought a Death Penalty as Dallas County DA. His Opponent Says She Will*, Dallas Morning News (Sept. 21, 2022), https://www.dallasnews.com/news/crime/2022/09/21/john-creuzot-hasnt-sought-a-death-penalty-as-dallas-county-da-his-opponent-says-she-will/.

[19] Fair and Just Prosecution, *Joint Letter from Elected Prosecutors Pledging to Work Towards the Elimination of the Death Penalty* (Jan. 2021), https://fairandjustprosecution.org/wp-content/uploads/2021/01/FJP-Biden-Death-Penalty-Joint-Letter.pdf.

[20] Fair and Just Prosecution, *Joint Statement from Elected Prosecutors Pledging to Work Towards the Elimination of the Death Penalty* (Feb. 2022), https://fairandjustprosecution.org/wp-content/uploads/2022/02/FJP-Death-Penalty-Joint-Statement-2022.pdf.

[21] CBS News, *John Creuzot Wins Dallas County District Attorney* (Nov. 9, 2022), https://www.cbsnews.com/texas/news/john-creuzot-wins-dallas-county-district-attorney/.

Creuzot's public opposition to the death penalty, Dallas County voters reelected Creuzot in 2022. The support for Creuzot in Dallas County reflects, at least in part, the county's evolving view of the death penalty, and appears to show a growing disapproval of its use.[22]

Creuzot's stance has seemingly had a significant impact on executions in Dallas County, influencing not only the decisions but also the action in death penalty cases coming from his office. However, Johnson has not been treated like others similarly situated in Dallas County—those who have been sentenced to death and exhausted their federal habeas appeals, such that the State could, or still can, proceed with the execution. In those other cases, no date was set in a manner that did not comply with Article 43.141 and Section 44.157.[23] Although

---

[22] Death Penalty Information Center, *Poll: Three-Quarters of Dallas Voters Say They Prefer Life Alternatives to Capital Punishment* (Mar. 21, 2023), https://deathpenaltyinfo.org/poll-three-quarters-of-dallas-voters-say-they-prefer-life-alternatives-to-capital-punishment.

[23] These include the twenty-one cases that resulted in execution noted in note 7 above (with the possible exception of Gary Green). Exhibit 10. The group of defendants similarly situated to Johnson also includes the defendants whose executions were scheduled but who were not executed. Exhibit 12 contains relevant documents from the following cases in which at least one execution order entered for the defendant did not result in an execution: *State v. Murphy*, No. F-01-00328 (283rd Dist. Ct., Dallas County, Tex.); *State v. Halprin*, No. F-01-00327 (283rd Dist. Ct., Dallas County, Tex.); *State v. Long*, No. F-05-52918 (Criminal Dist. Ct. No. 2,

all of these defendants were or are similarly situated to Johnson, in none of these cases has an execution order been based on an improper request by an attorney not authorized to represent the State's interest in the proceeding.

In all these other cases from Dallas County, the power vested in elected District Attorney Creuzot by Section 44.157 has been respected. For that reason, if this Court does not act and allows Johnson's execution to proceed on May 20, 2025, pursuant to the January 23 order, it will effectively have interpreted Section 44.157 in a manner that denies Johnson the protections granted to other similarly situated individuals.

## VI. Prayer for relief

WHEREFORE, Plaintiff Matthew Lee Johnson prays that the Court provide relief as follows:

1.  Find that the execution order violates Johnsons rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses.

---

Dallas County, Tex.); *State v. Robertson*, No. F-89-85961 (Criminal Dist. Ct. No. 5, Dallas County, Tex.).

2.     Stay his execution currently set for May 20, 2025.

Respectfully submitted,

/s/ David R. Dow

_____
David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (832) 842-4671
Email ddow@central.uh.edu

/s/ Jeffrey R. Newberry

_____
Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (832) 842-4671
Email jrnewber@central.uh.edu

32

## Verification

I, David R. Dow, attorney for Plaintiff in the above-entitled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 7, 2025.

/s/ David R. Dow
_____

David R. Dow

33

## Certificate of Service

I certify that on May 7, 2025, a true and correct copy of the above pleading was delivered via email to:

Stephen Hoffman
Criminal Appeals Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Email: Stephen.Hoffman@oag.texas.gov

s/ Jeffrey R. Newberry
_____

Jeffrey R. Newberry