IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW JOHNSON, | § | |
| *Plaintiff,* | § | |
| | § | CIV. ACT. NO. 4:25-cv-02066 |
| v. | § | **DEATH PENALTY CASE** |
| | § | |
| BRYAN COLLIER, et al., | § | |
| *Defendants.* | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF
JOHNSON'S MOTION FOR STAY OF EXECUTION
WITH BRIEF IN SUPPORT**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

*STEPHEN M. HOFFMAN
Assistant Attorney General
Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
(512) 936–1400

*Counsel of Record

———————————————

ATTORNEYS FOR DEFENDANTS

———————————————

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ................................................. iii

RESPONSE IN OPPOSITION TO MOTION FOR STAY ........... 1

STATEMENT OF THE CASE .................................................. 5

    I.    Facts of the Crime ............................................... 5

    II.   Punishment Facts .............................................. 5

    III.  Procedural History ............................................ 6

    IV.  The Setting of Johnson's Execution Date ............... 7

ARGUMENT ......................................................................... 9

    I.    Johnson Has Not Made a Strong Showing That He Will Succeed on the Merits. .............................................. 11

        A.    Johnson's due process claim misreads the statute, mischaracterizes the facts, and misinterprets the caselaw. ............................... 11

        B.    Johnson has not been denied equal protection. ........ 19

        C.    Johnson has already received the remedy he seeks—an execution date set by the convicting court. His lawsuit is just mandamus in disguise. ..... 24

        D.    The *Rooker–Feldman* doctrine additionally precludes relief. ................................................. 26

    II.   Johnson Will Not Suffer Irreparable Harm. ........................ 27

    III.  The State and the Public Have a Strong Interest in Seeing the State Court Judgment Carried Out. ................. 28

CONCLUSION ..................................................................... 30

**CERTIFICATE OF SERVICE**........................................................................ **32**

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 23

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ....................................................... 9, 28

*Barr v. Lee*, 591 U.S. 979 (2020) ......................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 23

*Belyeu v. Johnson*, 82 F.3d 613 (5th Cir. 1996)......................................... 14, 18

*Bible v. Davis*, No. 4:18-CV-1893, 2018 WL 3068804 (S.D. Tex. June 21, 2018) ................................................................................................................ 30

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215 (5th Cir. 2012) ................... 20

*Buck v. Davis*, 580 U.S. 100 (2017) .................................................................. 18

*Bucklew v. Precythe*, 587 U.S. 119 (2019)..................................................... 4, 28

*Buxton v. Collins*, 925 F.2d 816 (5th Cir. 1991) .............................................. 10

*Calderon v. Thompson*, 52 U.S. 538 (1998) ......................................... 10, 28, 29

*California v. Texas*, 593 U.S. 659 (2021) ......................................................... 25

*Crutsinger v. Davis*, 930 F.3d 705 (5th Cir. 2019) ............................................ 2

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019) ......................................... 29

*Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009) ............. 11

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) ................................... 22

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)............ 27

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) .................... 22

iii

*Ford v. Wainwright*, 477 U.S. 399 (1986) ........................................................ 15

*Gomez v. United States Dist. Court*, 503 U.S. 653 (1992) ................................. 29

*Green v. Johnson*, 160 F.3d 1029 (5th Cir. 1998) ............................................ 21

*Herrera v. Collins*, 506 U.S. 390 (1993) ......................................................... 10

*Hill v. McDonough*, 547 U.S. 573 (2006) ............................................. 3, 4, 9, 30

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ....................................................... 10

*John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) .......................... 20

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ................................................... 27

*Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010) ........................................ 11

*Lance v. Dennis*, 546 U.S. 459 (2006) ........................................................ 25, 27

*Martel v. Clair*, 565 U.S. 648 (2012) .............................................................. 29

*Medina v. California*, 505 U.S. 437 (1992) ...................................................... 19

*Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) ... 25

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................... 10

*Ochoa v. Collier*, 802 F. App'x 101 (5th Cir. 2020) ..................................... 25, 28

*Parr v. Quarterman*, 245 F. App'x 364 (5th Cir. 2007) .................................. 14

*Petteway v. Galveston Cnty.*, 111 F.4th 596 (5th Cir. 2024) ........................... 14

*Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004) ................................ 20

*Pruett v. Choate*, H-17-2418, 2017 WL 4277206 (S.D. Tex. Sept. 25, 2017) ... 26

*Reed v. Goertz*, No. 19-70022, 2025 WL 1261412 (5th Cir. May 1, 2025) ....... 12

*Rhines v. Weber*, 544 U.S. 269 (2005) ............................................................. 30

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ............................................ 26

*Spencer v. Texas*, 385 U.S. 554 (1967) ............................................................. 19

*State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021) .............................. 15

*Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001)............................................... 20

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020) ..................................... 30

*Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977) 20

*Washington v. Davis*, 426 U.S. 229 (1976) ....................................................... 20

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ...........................................passim

## Constitutional Provisions & Statutes

28 U.S.C. § 2253 .................................................................................................. 9

42 U.S.C. § 1983..........................................................................................passim

Tex. Code Crim. Proc. Art. 43.14 ..................................................................... 18

Tex. Code Crim. Proc. Art. 43.141 ..............................................................passim

Tex. Elec. Code § 273.021 ................................................................................. 15

U.S. Const. amend. XIV, § 1 ............................................................................. 11

## RESPONSE IN OPPOSITION TO MOTION FOR STAY

In May 2012, Plaintiff Matthew Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. After robbing Harris and the store, Johnson set Harris on fire and calmly left, leaving Harris in flames. Harris died days later from her agonizing injuries. Trial evidence also showed that Johnson had evaded/resisted arrest, committed carjacking, threatened and acted violently towards his wife and girlfriend (once trying to set a back porch on fire), stole from his work, and unwantedly exposed himself to women. Unsurprisingly, a Texas jury convicted Johnson of capital murder and sentenced him to die.

Pursuant to the order of the convicting court, Johnson will be executed sometime after 6:00 P.M. on May 20, 2025. Johnson has already availed himself of the full state and federal appeals available to death-row inmates in Texas. A mere thirteen days before his scheduled execution, Johnson filed the instant federal civil rights lawsuit. Complaint Pursuant to 42 U.S.C. § 1983 (Compl.), ECF No. 1. He also moved for a stay of execution. Motion for Stay of Execution, ECF No. 3. However, Johnson fails to show any entitlement to a stay. A stay of execution requires potential success on the merits of the underlying action, and Johnson is not likely to succeed on the merits because his lawsuit is entirely predicated on a blatant misconstruction of state statute.

Specifically, Johnson asserts that the Defendants, representatives of the Texas Department of Criminal Justice (TDCJ), violated his due process and equal protection rights when TDCJ's counsel, the Office of the Attorney General (OAG), sent letters notifying the convicting court of the conclusion of federal habeas proceedings and offering dates on which TDCJ could conduct an execution. Johnson contends that Texas Code of Criminal Procedure Article 43.141 "makes clear that an execution date may only be set by a trial court either sua sponte, or in response to a motion filed by the office which properly represents the State in that proceeding." Compl. at 1–2. 11–12. However, *this is simply untrue*. Article 43.141 does not mention the district attorney at all, let alone require that the district attorney move for an execution date. The statute only mandates that the convicting court set the execution date, subject to certain notification and timing provisions not relevant here. There is no prohibition on what information the convicting court can consider in setting a date or any restriction on contact with other state entities. Johnson's assertion is thus completely unfounded and incorrect, and his theories for relief crumble under the weight of his misreading of the statute. His corresponding failure to show potential success on the merits effectively disposes of Johnson's stay application. *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019) ("inability

to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay").

Nevertheless, Johnson also cannot show irreparable harm from the Defendants' actions. This is a § 1983 proceeding, so Johnson necessarily does not challenge the fact that he is being put to death (if so, his suit would sound in habeas). Compl. at 4 (Johnson "does not call into question the validity of his sentence"). Rather, he merely alleges that the convicting court should have followed a slightly different procedure in setting his execution that would have yielded an identical execution order and warrant.

Furthermore, Johnson's lawsuit is dilatory. Johnson's execution was set on January 20, 2025, ECF No. 1-1 (Ex. 1), but he waited almost three months later, until April 14, 2025, to seek mandamus relief in the Texas Court of Criminal Appeals (CCA), ECF No. 1-7 at 32 (Ex. 7), despite the fact his claims were ripe immediately after his execution date was set. Indeed, nothing precluded a mandamus action when OAG sent its notification letter on October 2, 2024.

Johnson has the burden of persuasion on his stay request, and he is required to make "a clear showing" that he is entitled to one. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "Last-minute stays should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 587 U.S. 119, 150

3

(2019); *see also Barr v. Lee*, 591 U.S. 979, 981 (2020). As the Supreme Court
has explained:

> "[T]he last-minute nature of an application" that "could have been
> brought" earlier, or "an applicant's attempt at manipulation,"
> "may be grounds for denial of a stay." *Hill*, 547 U.S. at 584
> (internal quotation marks omitted). . . . If litigation is allowed to
> proceed, federal courts "can and should" protect settled state
> judgments from "undue interference" by invoking their "equitable
> powers" to dismiss or curtail suits that are pursued in a "dilatory"
> fashion or based on "speculative" theories. [*Hill*, 547 U.S. at 584–
> 85].

*Bucklew*, 587 U.S. at 150–51 (footnote omitted).

Johnson fails to make the requisite showing to justify interference by the
federal courts. Almost thirteen years have passed since Johnson set Harris
aflame and left her to die. The ensuing delay in carrying out Johnson's
sentence should weigh heavily in the evaluation of this application for a stay,
and justice for Johnson's victims should be denied no longer. Simply put, "[t]he
people of [Texas], the surviving victims of Mr. [Johnson]'s crimes, and others
like them deserve better." *Id*. at 149. The State's interest in the timely
enforcement of Johnson's sentence is not outweighed by the unlikely possibility
that he will succeed in this lawsuit. Thus, Johnson's request for a stay should
be denied.

## STATEMENT OF THE CASE

### I.    Facts of the Crime

On federal habeas review, the Fifth Circuit provided the following summary of the crime:

> The facts underlying Johnson's conviction are not in dispute. They were recorded on a store surveillance camera and played for the jury at Johnson's capital murder trial. In May 2012, Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. He then demanded money from Harris. As Harris attempted to open the cash register, Johnson stole two cigarette lighters, two packages of cigarettes, and a ring from Harris's finger.

> Once Harris opened the cash register, Johnson took the money and then set Harris on fire. As Harris frantically attempted to extinguish herself, video recordings showed that Johnson calmly walked out of the store. Police officers arrived at the convenience store soon after and extinguished the flame. Aided by descriptions given by Harris and neighborhood residents, the police quickly apprehended Johnson. Because of the incident, Harris suffered second-to-fourth degree burns over 40% of her body. She died five days later.

*Johnson v. Lumpkin*, 74 F.4th 334, 337 (5th Cir. 2023) (citation and quotation omitted).

### II.    Punishment Facts

The Fifth Circuit also set out Johnson's criminal history and prior bad acts:

> At the sentencing stage of Johnson's trial, several witnesses testified regarding Johnson's criminal history. A police officer and Johnson's ex-girlfriend testified about an incident in which

Johnson attempted to break into an apartment where his girlfriend and her children were living. When he failed to break in, he set the back porch of the apartment on fire. Another woman testified about a separate incident where Johnson forced her out from her pickup truck, threw her to the ground, and drove off. And several police officers testified that Johnson has a history of aggravated assault, theft, and evading arrests.

*Johnson*, 74 F.4th at 338.

## III.  Procedural History

Johnson was convicted and sentenced to death in Dallas County, Texas, for the capital murder of Harris. *Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *1 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication). The CCA affirmed Johnson's conviction and sentence on direct appeal. *Id*. The Supreme Court denied certiorari review. *Johnson v. Texas*, 579 U.S. 931 (2016).

Concurrent with his direct appeal, Johnson filed a state habeas application. *Ex parte Johnson*, No. WR-86,571-01, 2019 WL 4317046, at *1 (Tex. Crim. App. Sept. 11, 2019) (not designated for publication). The convicting court entered findings of fact and conclusions of law recommending that relief be denied. *Id*. at *2. The CCA adopted most of the convicting court's findings and conclusions, and—based on those findings and its own review— denied habeas relief. *Id*. at *3.

Johnson then filed a habeas petition in federal district court. *Johnson v. Lumpkin*, 593 F. Supp. 3d 468 (N.D. Tex. 2022). Johnson also filed a motion to

recuse U.S. District Judge Ada Brown. *Id.* at 477. The district court denied Johnson's motion to recuse, denied habeas relief, and denied a certificate of appealability (COA). *Id.* at 529. The Fifth Circuit affirmed the denial of the motion to recuse and denied a COA. *Johnson*, 74 F.4th at 343. It subsequently denied a petition for panel rehearing and rehearing en banc in an opinion addressing ethical concerns with habeas counsel's conduct. *Johnson v. Lumpkin*, 76 F.4th 1037, 1038–39 (5th Cir. 2023). The Supreme Court denied certiorari review. *Johnson v. Lumpkin*, 144 S. Ct. 829 (2024).

## IV.  The Setting of Johnson's Execution Date

On October 2, 2024, the OAG filed a letter in the convicting court in which the OAG informed the court of the conclusion of federal habeas proceedings and explained TDCJ's availability to conduct an execution. ECF No. 1-2 (Ex. 2).[1] The OAG explained that it was willing to represent the State if the local district attorney did not. *Id.* On October 3, 2024, Johnson's counsel filed a response suggesting that the OAG was improperly acting as district attorney pro tem and asked the convicting court to refrain from entering an execution order. ECF No. 1-3 at 5 (Ex. 3). On October 30, 2024, the convicting

---

[1]    Two assistant district attorneys were served with a copy of the OAG's letter, *see* ECF No. 1-2 at 3 (Ex. 2), and the additional filings and correspondence, *see* ECF No. 1-3 at 8; (Ex. 3); ECF No. 1-4 at 3–4, 7, 12, 15, 18 (Ex. 4); ECF 1-7, at iii, 32 (Ex. 7), save three emails from the convicting court—two to counsel for the Director and one to defense counsel—where the convicting court responded only to the sender of a group email. *See* ECF No. 1-4 at 3, 7, 18 (Ex. 4).

court sent an email explaining that "the Court finds that under Article 43.114 [sic] of the Texas Code of Criminal Procedure, the express authority to set the execution falls to the trial court. As the statute makes clear, this authority rests solely with the convicting court once all appellate remedies have been exhausted." ECF No. 1-4 at 4 (Ex. 4). The convicting court also requested feedback on the possible execution dates. *Id*. On November 22, 2024, the OAG replied, explaining that the proposed dates were "acceptable to Director Lumpkin and the family of Nancy Harris" and asking for the opportunity to resolve any conflicts with TDCJ's availability should alternate dates be proposed. *Id*. at 7. On November 25, 2024, the convicting court replied to the OAG stating that it had not heard from "the parties" and would likely schedule Johnson's execution for April 8, 2025. *Id*. On November 30, 2024, Johnson's counsel wrote that they agreed that "the authority for setting an execution date rests solely with the convicting court," stated that counsel intended to litigate the issue of the OAG's "intermeddling," and expressed a preference for May 20, 2024, as the execution date. *Id*. at 18. On January 16, 2025, the OAG wrote as "counsel for the Director of TDCJ-CID Division" and stated that one proposed date was no longer available, but May 20th remained acceptable to the Director and the victims. *Id*. at 15. On January 20, 2025, the convicting court scheduled Johnson's execution for May 20, 2025. ECF No. 1-1 (Ex. 1).

Almost three months later, on April 14, 2025, Johnson filed a motion for leave to file a petition for mandamus in the CCA raising similar issues as the instant lawsuit. ECF No. 1-7 at 32 (Ex. 7). The CCA denied that motion for leave without written order on April 28, 2025. ECF No. 1-8 (Ex. 8).

## ARGUMENT

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 584. "It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). "It is well-established" that inmates on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id.* To demonstrate an entitlement to a stay, an inmate must demonstrate more than "the absence of frivolity" or "good faith." *Id.* at 892–93. Rather, the inmate

9

must make a substantial showing of the denial of a federal right. *Id*. In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id*. at 893. The State's "powerful and legitimate interest in punishing the guilty," as well as its interest in finality, must also be considered, especially in a case such as this where the State and victims have for years borne the "significant costs of federal habeas review." *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (both the State and the victims of crime have an important interest in the timely enforcement of a sentence).

Thus, in deciding whether to grant a stay of execution, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991).

I.    **Johnson Has Not Made a Strong Showing That He Will Succeed on the Merits.**

A.    **Johnson's due process claim misreads the statute, mischaracterizes the facts, and misinterprets the caselaw.**

Johnson contends that, absent deputation or appointment of a pro tem attorney, the local district attorney represents the State of Texas as prosecutor in the state convicting court. Compl. at 1–2, 11–22. Johnson asserts that only the district attorney as prosecutor can move for an execution date under Texas statute, and the OAG's communications with the convicting court violated Johnson's right to procedural due process by improperly usurping the district attorney's prosecutorial function. *Id.* Johnson proposes that the remedy for this alleged due process violation is a declaratory judgment and a stay preventing his execution. *Id.* at 31–32.

The Fifth Circuit recently summarized the necessary predicate for a plaintiff to prevail on a due process claim:

> To plead a violation of his due process rights, [a plaintiff] must show that [a defendant] deprived him of a constitutional right while acting under color of state law. *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. But process itself is not a protectable end. *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009). Rather, for the Due Process Clause to attach and its protections to obtain, a plaintiff must identify a protected "liberty interest." *Id.*

*Reed v. Goertz*, No. 19-70022, 2025 WL 1261412, at *4 (5th Cir. May 1, 2025). Under this rubric, Johnson's due process argument fails for several reasons.

**First**, Johnson wholly fails to identify a protected liberty interest. There is obviously nothing in the federal Constitution that explicitly requires a local district attorney to move for an execution date. However, states may create liberty interests that are protected by due process. *Id*. at *4. Johnson apparently purports to identify such a state-created interest in Article 43.141, the Texas statute governing the setting of execution dates. But Johnson's argument rests on a complete misrepresentation of the statutory text. Johnson asserts that Article 43.141 only allows the sua sponte setting of a date by the convicting court, or for the district attorney to move the convicting court for an execution date. Compl. at 1–2, 11–12. But Article 43.141 does not mention the district attorney at all. Rather, Article 43.141 simply provides that:

(a)   If an initial application under Article 11.071 is timely filed, the convicting court may not set an execution date before:

(1)   the court of criminal appeals denies relief; or

(2)   if the case is filed and set for submission, the court of criminal appeals issues a mandate.

(b)   If an original application is not timely filed under Article 11.071 or good cause is not shown for an untimely application under Article 11.071, the convicting court may set an execution date.

(b-1)  Not later than the second business day after the date on which the convicting court enters an order setting the execution date, a copy of the order must be sent by first-class mail, e-mail, or fax to:

(1)  the attorney who represented the condemned person in the most recently concluded stage of a state or federal postconviction proceeding; and

(2)  the office of capital writs established under Subchapter B, Chapter 78, Government Code 1.

(b-2)  The exclusive remedy for a failure to comply with Subsection (b-1) is the resetting of the execution date under this article.

(c)  An execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date.

(d)  The convicting court may modify or withdraw the order of the court setting a date for execution in a death penalty case if the court determines that additional proceedings are necessary on:

(1)  a subsequent or untimely application for a writ of habeas corpus filed under Article 11.071; or

(2)  a motion for forensic testing of DNA evidence submitted under Chapter 64.

(e)  If the convicting court withdraws the order of the court setting the execution date, the court shall recall the warrant of execution. If the court modifies the order of the court setting the execution date, the court shall recall the previous warrant of execution, and the clerk of the court shall issue a new warrant.

13

According to Article 43.141, the convicting court is responsible for setting a capital defendant's execution date, full stop.[2] Of course, as a matter of practice, district attorneys often do move for an execution date. But Article 43.141 does not require that the district attorney move for an execution before a setting or preclude the convicting court from having communications with other entities.[3] Here, the convicting court set Johnson's execution date, exactly as envisioned by Article 43.141.

Further, setting an execution date is a ministerial function of the convicting court. *Belyeu v. Johnson*, 82 F.3d 613, 615 (5th Cir. 1996); *see also Parr v. Quarterman*, 245 F. App'x 364, 365–66 (5th Cir. 2007). In *Belyeu*, the Fifth Circuit held that "[t]he setting of the date for execution is not a critical part of the sentencing proceedings, but is rather a ministerial act implementing the judgment earlier entered." 82 F.3d at 615. The Fifth Circuit

---

[2]     This was acknowledged by both the convicting court and Johnson's counsel. ECF No. 1-4 at 4, 18 (Ex. 4).

[3]     In a footnote, Johnson offers bill analysis that suggests that, at some point in the legislative process, there was discussion of the idea that Article 43.141 should require the State's attorney serve a motion to set an execution date on the condemned or the trial court should notify the condemned if it intended to set a date sua sponte. Compl. at 11 n.7. Suffice it to say that the language from the analysis did not make it into the final statute (as reproduced above). It is a nullity and has no relevance here. *See Petteway v. Galveston Cnty.*, 111 F.4th 596, 604 (5th Cir. 2024) ("It is well established that when the statute's language is plain, the sole function of the courts— at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quotation marks and citation omitted)).

observed that Belyeu "through his present counsel, requested the state court to withdraw the order, and it refused. Given its ministerial character, this post-entry appearance was adequate to meet any due process rights Belyeu may have had." *Id.*; *see also Ford v. Wainwright*, 477 U.S. 399, 413 (1986) ("the fundamental requisite of due process of law is the opportunity to be heard" (quotation omitted)).

Here, Johnson was represented by counsel when the convicting court set his execution date. He made his objections known to the CCA and the convicting court, which declined to act on them. This is more than sufficient under *Belyeu* to satisfy whatever due process rights (if any) Johnson has in this ministerial function.

***Second***, Johnson provides no on-point precedent from either state or federal court that forbids the OAG or TDCJ from sending notification letters to the convicting court or coordinating the setting of an execution date. Rather, Johnson points to the CCA's holding in *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021). Compl. at 12–13. The CCA's *Stephens* decision invalidated Texas Election Code Section 273.021, which provided the OAG with the authority to prosecute an election law offense. *Id.* at 49, 57–58. The CCA held that allowing the OAG to prosecute these offenses violated the separation-of-powers clause of the Texas Constitution, since the authority to

15

prosecute crime is vested in Texas district attorneys (part of the judicial branch), not the OAG (part of the executive). *Id*. at 50–51, 55–56. The CCA reasoned that, absent consent and a deputization order from a local prosecutor or the request of district or county attorney for assistance, the OAG has no authority to independently prosecute criminal cases in Texas trial courts. *Id*. at 55–56.

Based on *Stephens*, Johnson tortuously reasons that the OAG's notification letter and emails were tantamount to moving for an execution date, which amounts to impermissible prosecution because the OAG is not district attorney pro tem in this case, which renders the convicting court's execution order invalid. Of course, this logic falls apart due to Johnson's misreading of the statute. Again, Article 43.141 does not require the State to move for an execution date, even if the State's attorney does sometimes make such a motion. As Johnson concedes, Article 43.141 allows the convicting court to set an execution date sua sponte. Compl. at 2, 25–26.

Moreover, this is obviously not an election case. And, contrary to Johnson's arguments, *see* Compl. at 18, nor is the OAG prosecuting Johnson in any sense of the word. Johnson's conviction and sentence were obtained by the Dallas County District Attorney's Office. 46.RR.2; 53.RR.2.[4] His appeal was

---

[4]    "RR" refers to the reporter's record in Johnson's underlying capital case.

opposed by the Dallas County District Attorney's Office. State's Brief, No. AP-77,030 (Tex. Crim. App. Jan. 13, 2015). His state habeas application was litigated by the Dallas County District Attorney's Office. 2.SHCR.453 (answer).[5] In contrast, the OAG merely sent an informative letter and emails to the convicting court. As explained below, this was well within the OAG's purview as legal counsel for TDCJ, the state entity responsible for carrying out Johnson's execution. Such helpful correspondence does not constitute *prosecuting* Johnson's case.[6] It merely assists in effectuating the sentence that the convicting court had already imposed and which TDCJ is statutorily required to carry out, much as TDCJ maintains custody of prisoners in noncapital cases under a sentence of confinement. No one would ever say TDCJ making arrangements with the convicting court for taking possession of an inmate following a sentence of confinement constitutes prosecuting those

---

[5]    "SHCR" refers to the clerk's record from Johnson's state habeas proceeding.

[6]    Johnson spills much ink trying to establish that OAG is not the district attorney pro tem in this case. Compl. at 13–14 & nn.8–9. But this is a mere strawman. Since Johnson erroneously believes the statute requires that the district attorney must move for an execution date, he believes he must show that the OAG is not the district attorney. But, as shown above, the premise of Johnson's argument is simply false, and there is no statutory requirement that the district attorney move for an execution date.

Nevertheless, for clarity's sake, the OAG has never claimed to be acting pro tem in this matter, and the initial notification letter sent to the convicting court acknowledged as much when the OAG offered to serve as district attorney pro tem in the future. ECF No. 1-2 (Ex. 2).

inmates as a district attorney. And, even if *Stephens* could be plausibly stretched to cover the instant situation, that would clearly be a decision for the CCA, not this Court. As far as the federal courts go, the Fifth Circuit has authoritatively construed the setting of an execution date as a ministerial function of the convicting court—not a prosecutorial exercise. *Belyeu*, 82 F.3d at 615.

**_Third_**, Johnson mischaracterizes the nature of the OAG's communications with the convicting court. The OAG merely (1) informed the convicting court of the conclusion of federal habeas proceedings, (2) provided dates that its client, TDCJ, was available to conduct the court-ordered execution, and (3) offered to assist in a pro tem capacity if necessary. ECF No. 1-2 (Ex. 2).

The OAG represents TDCJ in federal habeas proceedings. *Buck v. Davis*, 580 U.S. 100, 110 (2017) ("[T]he Texas Attorney General represents state respondents in federal habeas cases[.]"). As such, it is uniquely qualified to tell the convicting court when those proceedings are over. Further, the TDCJ-CID Director is responsible for carrying out executions under state law. Tex. Code Crim. Proc. Art. 43.14. Executions require TDCJ personnel and resources, and certain dates may conflict with previously scheduled executions (or executions in the process of being scheduled). Again, TDCJ and the OAG are uniquely

18

qualified to explain to the convicting court the most opportune time to set an execution date. Finally, the OAG offered to assist in a pro tem capacity if necessary. The convicting court did not find it necessary to appoint the OAG, so any complaint based on this offer is moot.

**Fourth**, the convicting court's proper application of Article 43.141 is a matter of state criminal procedure. The Court should not attempt to read into the statute terms simply not present in the text when the CCA—which has lawful authority over such matters—has declined the opportunity to do so. *See*, *e.g.*, *Medina v. California*, 505 U.S. 437, 444 (1992) ("[I]t has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.") (alteration in original) (quoting *Spencer v. Texas*, 385 U.S. 554, 564 (1967)). The procedure for setting an execution date is a ministerial act entirely prescribed by state law. Federal courts have little to no authority to tell state courts how to interpret matters of pure state law.

Simply put, Johnson has the statute, the facts, and the caselaw wrong. Given that his due process claim rests entirely on incorrect pretenses, the Court should summarily dismiss it, and any stay should be denied.

## B.    Johnson has not been denied equal protection.

Johnson's complaint also asserts that the convicting court's order denied

him equal protection. Compl. at 23–30. As explained by the Fifth Circuit:

> "[T]he Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000). In addition, the main purpose of the Equal Protection Clause is to prevent official conduct that discriminates on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239 (1976). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)); *see also Village of Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012).

If a case does not implicate a suspect class or a fundamental right, "the appropriate standard of review is whether the difference in treatment between classes rationally furthers a legitimate state interest. Under rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (quotations and footnotes omitted).

Johnson's equal protection argument is facially deficient under these standards. Johnson does not allege that TDCJ is discriminating against him

20

based on his race. *See generally* Compl. He offers no controlling cases that says that having the local district attorney move for an execution date is a fundamental right under equal protection jurisprudence, and his concession that a trial court may sua sponte set an execution date undermines his claim. *Id*. Capital murderers do not constitute a suspect class. *See Green v. Johnson*, 160 F.3d 1029, 1044 (5th Cir. 1998). Defendants have explained a rational basis for sending such letters, including that the OAG is uniquely situated to explain when federal habeas is complete and that TDCJ is statutorily responsible for conducting executions and for coordinating the availability of the execution chamber. Johnson cannot possibly maintain that there is no "reasonably conceivable state of facts" that could provide a basis for TDCJ's decision to send the letters in question. *Wood*, 836 F.3d at 539.

Indeed, instead of engaging with the standard, Johnson asserts that his execution date must be sought by the locally elected district attorney because the elected district attorney reflects the will of the county's people. Compl. at 23–25, 28–31. Putting aside the fact that the statute has no such requirement, it is worth noting that the judge in this case is also an elected official who effectuates the will of the people. *Id*. at 28. But more importantly, § 1983 is not the appropriate forum for vindicating Johnson's perceived broken political promises—broken political promises are avenged at the ballot box. Johnson's

21

political argument is a non sequitur[7] and does not have relevance to the equal protection analysis, should not be considered by this Court, and most certainly does not justify any relief. *Cf. FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 396–97 (2024) ("some issues may be left to the political and democratic processes").

In conjunction with this claim, Johnson asserts that he constitutes a class of one. Compl. at 27. Here, Johnson seems to allege there is a general practice of district attorneys moving for execution dates, and the district attorney did not make a motion in his case. *Id.* at 27. "[A] class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason." *Wood*, 836 F.3d at 541. However, this doctrine is not applicable to "'forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Id.* (quoting *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 603 (2008)). In *Wood*, a lethal-injection § 1983 case, the Fifth Circuit observed that TDCJ's strategic decisions to test some execution drugs but not others, made "in the context of an ever-changing array of suits attacking its

---

[7]    Johnson's tortured analogy to the Eighth Amendment's evolving standards of decency similarly has no purchase. Compl. at 24–25. Johnson provides no compelling precedent showing the cited jurisprudence or rationales have been imported into an equal protection analysis under the Fourteenth Amendment.

use of capital punishment from all angles" was within the inherent discretion of the challenged action. *Wood*, 836 F.3d at 541. Likewise, TDCJ/OAG's decision to send a notification letter is a discretionary determination that rests on numerous case-specific factors, including (but not limited to) the facts of the crime, case posture, the inmate's claims or potential claims, consultation with the victims of the crime, and resource availability. Thus, like in *Wood*, Johnson's equal protection claim necessarily fails as a class of one claim.

But even if equal protection was applicable via a class of one rubric or otherwise, Johnson does not muster a shred of affirmative evidence that TDCJ/OAG sought to treat him differently than other capital inmates for any impermissible reason or that there was no rational basis for the OAG's letters. His claim is thus entirely conclusory. In general, a complaint will not survive a motion to dismiss unless it pleads sufficient facts to allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations stated in the complaint must be enough to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must provide "more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and internal quotations omitted). As explained above, Johnson identifies no entitlement in Article 43.141 to have the district attorney move for an execution date or any preclusion of convicting court contact with TDCJ or the OAG. And, again, Johnson cannot possibly maintain that there is no "reasonably conceivable state of facts" that could provide a basis for the OAG's decision to send the letters in question. *Wood*, 836 F.3d at 539.

Accordingly, Johnson cannot show that he is likely to prevail in his civil rights lawsuit under an equal protection theory. And because Johnson cannot show a likelihood of success in his civil rights lawsuit, he is not entitled to declaratory or injunctive relief or a stay of execution.

### C.    Johnson has already received the remedy he seeks—an execution date set by the convicting court. His lawsuit is just mandamus in disguise.

The potential remedies in this case underscore the unseriousness of Johnson's claims. Johnson has already received what Article 43.141 demands—an execution date set by the convicting court. Forcing a reset would yield the exact same thing. Johnson may assert that he is merely asking for declaratory relief and an injunction, but the true relief sought is forcing the

24

OAG to not send letters to the convicting court or barring the convicting court from considering them. Johnson thus seeks to have this Court compel the convicting court to do what he believes the CCA should have required it to do. His complaint therefore raises nothing more than "dressed-up" allegations that the state court should be ordered to apply state law properly. *Pruett v. Choate*, 711 F. App'x 203, 207 nn.9–10 (5th Cir. 2017). Accordingly, Johnson's lawsuit is an improper request for mandamus relief by way of a federal court appeal of the convicting court and the CCA's rulings.[8] *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) (an "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly" (quotation omitted)); *see also Moye v. Clerk*, *DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) ("[A] federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought."); *Ochoa v. Collier*, 802 F. App'x 101, 105 (5th Cir. 2020) ("[F]ederal courts do not have jurisdiction to issue the writ against a state actor or state agencies.").

---

[8]    Johnson's transparent effort to avoid dismissal of his complaint as impermissible mandamus by naming TDCJ officials as Defendants rather than the state courts should not be condoned. *See California v. Texas*, 593 U.S. 659, 672 (2021) ("Remedies . . . ordinarily operate with respect to specific parties." (quotation marks and citation omitted).

Johnson is effectively seeking to compel the state court to redo the execution order under his preferred procedure—i.e., impermissible mandamus relief. The Court cannot seriously entertain effectively banning the OAG or TDCJ from sending letters to the convicting court. *See Pruett v. Choate*, H-17-2418, 2017 WL 4277206, at *5 (S.D. Tex. Sept. 25, 2017) ("The only relief Pruett seeks is an order compelling Texas officials to comply with what Pruett sees as the requirements of [state law], or to act so as to allow Pruett to independently effectuate his rights under [state law]. Regardless of how Pruett chooses to characterize this relief, it is, at its core, mandamus."). TDCJ is statutorily responsible for carrying out executions, and OAG is responsible for representing TDCJ. Moreover, such a ban would plainly run afoul of TDCJ or the OAG's First Amendment rights and constitute an unwarranted federal intrusion into the workings of the state criminal justice system. A violation of state procedure, even assuming one occurred, is for the state courts to correct. The Court should not entertain Johnson's ill-disguised attempt to micro-manage the actions of the state court judge.

### D. The *Rooker–Feldman* doctrine additionally precludes relief.

The *Rooker–Feldman* doctrine, which emerged from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits "cases

brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). When *Rooker–Feldman* applies, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance*, 546 U.S. at 463.

Here, Johnson "seek[s] what in substance would be appellate review of the state judgment in a United States district court, based on [his] claim that the state judgment itself violates [his] federal rights.'" *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The theories underlying Johnson's lawsuit are muddled. But regardless of whether he challenges the convicting court's execution order (which itself is simply an extension of the judgment and sentence imposed at trial) or the CCA's discretionary decision to deny leave to file a petition for mandamus, *Rooker–Feldman* precludes Johnson's lawsuit, which effectively asks this Court to sit as an appellate court over the CCA or the convicting court. As such, Johnson has no chance for success on the merits, and any stay should be denied.

## II.    Johnson Will Not Suffer Irreparable Harm.

In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in

itself suffice." *Barefoot*, 463 U.S. at 893. But this is a § 1983 action, which means that Johnson necessarily does not challenge the validity of his sentence. *Cf. Ochoa*, 802 F. App'x at 106. Johnson even admits as much. Compl. at 4 ("the claim does not call into question the validity of his sentence"), 21–22 ("Johnson does not assert that his Due Process rights are violated by the mere issuance of an execution order."). Even under the theories of his lawsuit, when Johnson is executed, his sentence has only been lawfully fulfilled—that is not irreparable harm. Rather, in this case the harm analysis collapses into the merits analysis. Article 43.141 simply requires that the convicting court set the date and comply with various scheduling and notification requirements. It makes no mention of a motion by the State's attorney, and it does not preclude corresponding with another state official or entity. Johnson has thus gotten exactly what the Article 43.141 provides for—an execution set by the convicting court. If Johnson got the relief requested in his lawsuit, he would end up with exactly the same thing.

### III.    The State and the Public Have a Strong Interest in Seeing the State Court Judgment Carried Out.

The State and crime victims have a "powerful and legitimate interest in punishing the guilty." *Calderon*, 523 U.S. at 556 (citation omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 587 U.S. at 149 (quotation

omitted); *see Nelson*, 541 U.S. at 650 ("a State retains a significant interest in meting out a sentence of death in a timely fashion"); *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) ("[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). Once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension." *Calderon*, 523 U.S. at 556. "Only with an assurance of real finality can the State execute its moral judgment in a case" and "the victims of crime move forward knowing the moral judgment will be carried out." *Id*. Consequently, the State should be allowed to enforce its "criminal judgments without undue interference from the federal courts." *Crutsinger v. Davis*, 936 F.3d 265, 273 (5th Cir. 2019) (citations and internal quotations omitted).

Here, the public's interest lies in executing sentences duly assessed, and for which years of judicial review have found no reversible error. Johnson has already passed through the state and federal collateral review process. The public's interest is not advanced by postponing Johnson's execution any further, and the State opposes any action that would cause further delay. *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original). Thirteen years after the

commission of Johnson's crime, justice should no longer be denied. *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).

Moreover, it bears repeating that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Thus, "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill*, 547 U.S. at 585. As previously noted, Johnson's claims were ripe months ago when Johnson's execution was set in January, if not when the OAG sent its letter last fall. Johnson waited until April to seek state relief, and this lawsuit—belatedly filed thirteen days before the execution—is precisely the sort of "dilatory tactic" that the Supreme Court has suggested that this Court not entertain. Any stay should be denied.

## CONCLUSION

For the foregoing reasons, the Defendants ask that the Court deny any stay of execution. Alternatively, the Court should deny any stay *and* dismiss Johnson's lawsuit.[9] *See*, *e.g.*, *Bible v. Davis*, No. 4:18-CV-1893, 2018 WL 3068804, at *11 (S.D. Tex. June 21, 2018), *aff'd*, 739 F. App'x 766 (5th Cir.

---

[9]    Due to the truncated timeframe to respond produced by Johnson's dilatory filing, Defendants only respond to Johnson's stay motion and reserve all arguments and defenses pertaining to his complaint.

2018), at *11 ("Because this lawsuit cannot proceed without a stay of [Plaintiff]'s execution date, dismissal of the action is warranted.").

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
    for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

*Attorney-in-charge

<u>s/ Stephen M. Hoffman</u>
*STEPHEN M. HOFFMAN
Assistant Attorney General
Texas Bar No. 24048978
Southern District Bar No. 602073
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Stephen.Hoffman@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I do hereby certify that on May 12, 2025, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

David R. Dow & Jeff Newberry
University of Houston Law Center
4170 Martin Luther King Blvd.
Houston, TX 77204-6060
ddow@central.uh.edu
jrnewber@central.uh.edu

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General

32