UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW LEE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-2066 |
| | § | |
| BRYAN COLLIER, et al. | § | |
| | § | |
| Defendants. | § | |

## ORDER OF DISMISSAL

The State of Texas has scheduled the execution of death-row inmate Matthew Lee Johnson for **May 20, 2025**. On May 7, 2025, Johnson filed a complaint pursuant to 42 U.S.C. § 1983. (Docket Entry No. 1). Johnson argues that way the death warrant issued in his case violated the Due Process and Equal Protection Clauses. Johnson has also filed a motion to stay his execution date. (Docket Entry No. 3). For the reasons discussed below, the Court **denies** Johnson's motion to stay and **dismisses** this case **with prejudice**.

## BACKGROUND

### I.  The Crime and Prior Legal Proceedings

When adjudicating his federal petition for a writ of habeas corpus, the United States District Court for the Northern District of Texas described the facts of Johnson's crime as follows:

> The grim facts of Johnson's capital offense are not in genuine dispute. They were recorded on a store surveillance camera and played for the jury at Johnson's capital murder trial. In May 2012, Johnson entered a convenience store and poured a bottle of what was later determined to be lighter fluid over the head of 76-year-old store clerk Nancy Harris. Johnson then demanded money. As Harris attempted to open the cash register, Johnson took two cigarette lighters, two packages of cigarettes, and a ring from Harris' finger. Once Harris opened the cash register, Johnson took the money and then set Harris aflame. As Harris frantically attempted to extinguish herself and her clothing, . . . Johnson "calmly" walk[ed] out of the store. *Ex parte Johnson*, WR-87,574-01, 2019 WL 4317046 (Tex. Crim. App. Sept. 11, 2019). Police officers arrived at the convenience store very quickly and used a fire

>extinguisher to put out the flaming Harris, who died five days later from her burns. A little more than an hour after setting Harris afire, Johnson was arrested shirtless carrying two new cigarette lighters, two packages of cigarettes, and Harris' ring. Police noted his unusually calm demeanor during his transport to the police station, corroborated by a video which was also played for the jury.

*Johnson v. Lumpkin*, 593 F.Supp.3d 468, 479-80 (N.D. Tex. 2022), *aff'd*, 74 F.4th 334 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 829 (2024). Johnson stood trial in 363rd Judicial District Court for Dallas County, Texas ("convicting court"). On November 8, 2013, the jury returned a verdict resulting in a death sentence.

Johnson has challenged his conviction and sentence in both state and federal court. The Texas Court of Criminal Appeals affirmed his conviction and sentence, *Johnson v. State*, 2015 WL 7354609, at *1 (Tex. Crim. App. Nov. 18, 2015), and the United States Supreme Court denied his petition for certiorari, *Johnson v. Texas*, 579 U.S. 931 (2016). Johnson unsuccessfully challenged the validity of his conviction and sentence in a state habeas action. *Ex parte Johnson*, 2019 WL 4317046, at *3 (Tex. Crim. App. 2019). Johnson has also availed himself of federal habeas remedies.

## II.   Texas Law

On January 20, 2025, the convicting court scheduled Johnson's execution for May 20, 2025. (Docket Entry No. 1-1). The State of Texas intends to execute Johnson on "the thirteenth anniversary of the crime that led to Nancy Harris' death." (Docket Entry No. 1-2). The instant lawsuit challenges the circumstances surrounding the setting of Johnson's execution date. Johnson alleges that the Texas Attorney General's Office played an improper role in the process. Understanding Johnson's complaint requires a review of the Texas law governing executions.

"The capital-punishment context presents a particularly detailed legislative scheme." *In re Texas House of Representatives*, 702 S.W.3d 330, 344 (Tex. 2024); *see also State ex rel. Holmes*

2

*v. Honorable Court of Appeals for Third Dist.*, 885 S.W.2d 389, 394 (Tex. Crim. App. 1994) ("[T]he legislature has provided specific procedures relating to a capital trial and the execution of the death sentence."). An execution involves interaction between state actors. Texas state law anticipates the involvement of various state elected officials, judicial officers, and agencies. Each actor has a role in the process.

"[A] trial court has a ministerial duty to carry out a sentence imposed." *In re State ex rel. Ogg*, 2022 WL 2344100, at *2 (Tex. Crim. App. 2022); *see also Belyeu v. Johnson*, 82 F.3d 613, 615 (5th Cir. 1996) ("The setting of the date for execution is not a critical part of the sentencing proceedings, but is rather a ministerial act implementing the judgment earlier entered.").[1] The convicting court has the statutory authority to set the date for an execution and to issue a death warrant. Through articles 43.141 and 43.15 of the Texas Code of Criminal Procedure, Texas has established some execution guidelines. Texas law specifies when a death warrant may issue and what must transpire afterwards. *See In re Texas Department of Criminal Justice*, 2025 WL 907711, at *3 (Tex. Crim. App. 2025) ("[S]etting an execution date is an example of specific, limited jurisdiction that can be exercised only as provided by the statute conferring that limited jurisdiction."). Under those statutes, the convicting court cannot set an execution date until the conclusion of an inmate's state habeas process. Tex. Code Crim. Pro. art. 43.141(a); *see also Ogg*, 2022 WL 2344100, at *1. After that date, the statutes set out requirements the convicting court must follow in issuing the death warrant, including to whom the court must send notices and how

---

[1] Johnson argues that "[t]he scheduling of an execution involves discretion and is not a ministerial act." (Docket Entry No. 13 at 7). Johnson says that "the issue of 'whether a trial court violates a ministerial duty by refusing to sign an order setting an execution date' is one that it has not determined. *In re State ex rel. Ogg*, No. WR-93,812-01 (Tex. Crim. App. Feb. 1, 2023)." (Docket Entry No. 13 at 7). The question in the cited case, which was dismissed before resolution, did not involve the question of whether setting an execution was a ministerial duty, but whether *not* setting a date *violated* a ministerial duty. Subsequent cases have indicated that setting an execution date is a ministerial duty. *See In re State ex rel. Ogg*, 692 S.W.3d 481, 485 (Tex. Crim. App. 2024).

the court may modify or withdraw the date. Tex. Code Crim. Pro. art. 43.141(b-1), (b-2); Tex. Code Crim. Pro. art. 43.15. The statutes also provide only specific and limited circumstances under which the convicting court may modify or revoke the death warrant. Tex. Code Crim. Pro. art. 43.141(d); *Ogg*, 692 S.W.3d at 486.

Texas law is largely silent about the process a convicting court must follow in setting the execution date or who may participate in it. *See In re State ex rel. Ogg*, 692 S.W.3d 481, 485 (Tex. Crim. App. 2024) ("[W]hen the Legislature wishes to give convicting courts limited jurisdiction to oversee certain processes pertaining to executions, it knows how to do so."). A convicting court has a measure of discretion in setting an execution date. *See Ogg*, 2022 WL 2344100, at *2. The law neither proscribes nor limits what information a convicting court may consider in determining whether to schedule an execution, when to do so, or what date to set.

The local district attorney's office may be involved in the process. The Texas Constitution provides that "[t]he County Attorneys shall represent the State in all cases in the District and inferior courts of their respective counties." Tex. Const. art. V, § 21; s*ee also* Tex. Gov't § 44.157 ("The criminal district attorney has exclusive control of criminal cases and all cases heard on habeas corpus in the courts of Dallas County and serves as the district attorney of all the district courts in Dallas County."). Texas statutory law, however, does not explicitly include any information about what role a county district attorney may assume, other than to receive notice after a date has been set. Tex. Code Crim. Pro. art. 43.15. In practice, both parties agree that "district attorneys often do move for an execution date." (Docket Entry No. 11 at 14).[2]

---

[2] In 2015, the Texas legislature considered a bill stating that "[a] convicting court may not set an execution date unless . . . the attorney representing the state files a written motion to set an execution date . . . ." C.S.H.B. No. 2110 (available at *https://capitol.texas.gov/tlodocs/84R/analysis/doc/HB02110H.doc*). The bill did not pass and did not become law.

4

Responsibility for carrying out the execution lies with the Director of the Texas Department of Criminal Justice ("TDCJ"). Tex. Code Crim. Pro. art. 43.13, 43.16; *see also In re Texas House of Representatives*, 702 S.W.3d at 343 ("The executive branch has the duty to comply with a death warrant—and in so doing, the authority to exercise discretion lawfully reposed in it."). The issuance of the death warrant is "a solemn judicial *command* to enforce a sentence imposed by the court pursuant to a lawful judgment in a specified time, place, and manner" which TDCJ must follow. *Id*. at 342. "Immediately" after receiving the death warrant, the Texas Department of Criminal Justice takes custody of the "condemned person." Tex. Code Crim. Pro. art. 43.16.[3]

Texas law anticipates a "broad grant of authority" to TDCJ in execution-related matters. *Texas Department of Criminal Justice v. Canales*, 2024 WL 3381469, at *4 (Tex. App. -Austin, 2024). An execution requires exact preparation. "TDCJ has a compelling interest in maintaining an orderly, safe, and effective process when carrying out an irrevocable, and emotionally charged, procedure. Prison administrators understandably create intricate and exacting execution protocols to minimize the unknowns and reduce risk." *Ramirez v. Collier*, 558 F.Supp.3d 437, 441 (S.D. Tex. 2021). Texas has adopted a specific and detailed execution protocol which TDCJ must follow. In addition, Texas statutory law sets out standards TDCJ must follow for: designating an executioner, Tex. Code Crim. Pro. art. 43.186; allowing proper access to attorneys and visitors of the inmate, Tex. Code Crim. Pro. art. 43.17; deciding who will be present at the execution, Tex. Code Crim. Pro. art. 43.20; monitoring for suspension or modification of the execution date, Tex. Code Crim. Pro. art. 43.23; safeguarding the condemned from "torture, or ill treatment, or unnecessary pain," Tex. Code Crim. Pro. art. 43.24; and preparing for the "immediate[]" post-

---

[3]   Tex. Code Crim. Pro. art. 43.16 refers to the "Department of Corrections," the former title of the Texas Department of Criminal Justice. *See Suniga v. State*, 2019 WL 1051548, at *8 (Tex. Crim. App. 2019).

execution handling of the inmate's body, Tex. Code Crim. Pro. art. 43.25. The Attorney General's Office has the constitutional and statutory responsibility to represent TDCJ. Tex. Const. art. 4, §§ 1, 22; Tex. Gov't Code § 402.021.

Texas law does not describe what role, if any, the condemned inmate will play in the execution-setting process. The Fifth Circuit has held that the Constitution does not require that the inmate or his attorney be present for the setting of an execution date. *Parr v. Quarterman*, 245 F. App'x 364, 365-66 (5th Cir. 2007). Those facing a death sentence, of course, almost always raise legal challenges as the execution nears, some of which involve the process and procedures for carrying out the execution. *See Price v. Dunn*, 587 U.S. 999, 1008 (2019) ("Petitioner's strategy is no secret, for it is the same strategy adopted by many death-row inmates with an impending execution: bring last-minute claims that will delay the execution . . . .") (Thomas, J., concurring). Inmates have specifically raised different challenges alleging non-compliance with Texas law in issuing a death warrant. *See, e.g., In re State ex rel. Sims*, 2023 WL 1824688, at *1 (Tex. Crim. App. 2023). Some of those legal challenges involve TDCJ's role in the execution process.

TDCJ and Attorney General's Office officials must complete all execution preparations within a strict timeline. An execution may be as early as "the 91st day after the date the convicting court enters the order setting the execution date." Tex. Code Crim. Pro. art. 43.141.

### III. Johnson's Complaint

Johnson does not attack his conviction or sentence. Johnson does not question the convicting court's authority to set an execution date. Johnson instead challenges how the convicting court set his date. Johnson's arguments allege defects in process, not substance.

Johnson's complaint objects to the Attorney General Office's involvement in setting his execution date. According to the version of events set out in Johnson's complaint, the Attorney General's Office wrote a letter on October 2, 2024, informing the convicting court that all litigation relating to Johnson's conviction and sentence had concluded. The October 2, 2024 letter did not move for the filing of an execution date or specifically ask the convicting court to do so on its own initiative. Instead, the October 2, 2024 letter advised the trial court of dates which were "all currently available for [an] execution." The letter offered to inform the convicting court if any other dates were available. The letter also offered: "If the Dallas County District Attorney chooses not to participate in this proceeding, [the Attorney General's Office] is willing to step in to represent the State pro tem" or "as a friend of the Court." (Docket Entry No. 1-2 at 1).

Johnson provides correspondence between the convicting court, the Attorney General's Office, Johnson's legal counsel, the Dallas County District Attorney's Office. (Docket Entry No. 1-4). In an October 30, 2024 email, the convicting court acknowledged the October 2, 2024 letter and observed that "the express authority to set the execution falls to the trial court." (Docket Entry No. 1-4 at 4). The October 20, 2024 email remarked: "With the appeals now concluded, the Court is prepared to move forward in selecting a date for execution." (Docket Entry No. 1-4 at 4). The email "invite[d] both parties to provide any further input on these or alternative dates before the Court makes its final determination." (Docket Entry No. 1-4 at 4). Johnson includes other email correspondence discussing the setting of an execution date, such as one which his attorneys complain that "the Attorney General's office has no authority to represent the State's interests in requesting an execution date be set" and indicate an intention "to litigate the issue of the AG's intermeddling in this case." (Docket Entry No. 1-4 at 19).

Johnson attempted to challenge the setting of his execution date in state court. On April 14, 2025, Johnson filed a Motion for Leave to File Petition for Writ of Mandamus in the Texas Court of Criminal Appeals. (Docket Entry No. 1-6).[4] Johnson also submitted a proposed Petition for Writ of Mandamus. (Docket Entry No. 1-7). Johnson wished to argue that "the trial court issued the [warrant of execution] without proper authority" and "acted at the behest of intermeddling from the Attorney General's Office, but that office lacks any lawful authority to move the trial court to issue an execution warrant." (Docket Entry No. 1-7 at 12). On April 28, 2025, the Court of Criminal Appeals denied leave to file a writ of mandamus. (Docket Entry 1-8).

This lawsuit followed. Johnson brings suit under 42 U.S.C. § 1983. Section 1983 provides a cause of action against state actors when a plaintiff suffers "deprivation of any rights, privileges or immunities secured by the Constitution and laws" from those acting with state authority. Johnson sues Bryan Collier in his official capacity as the executive director of TDCJ; Eric Guerrero in his official capacity as the director of TDCJ's Correctional Institutions Division; and Kelly Strong in her official capacity as the senior warden of the Huntsville Unit (the location at which the State will execute Johnson).

Johnson argues that "Texas statutory law makes clear" that an execution date must originate only with a District Attorney's Office or the convicting court itself. (Docket Entry No. 1 at 1-2). As previously discussed, the relevant statutes do not establish that requirement. Instead, Johnson relies on legislative history which contains a statement only referring to (1) what "'the

---

[4]   The convicting court set Johnson's execution on January 20, 2025. Johnson waited until April 14, 2025, to move for mandamus relief in state court. Defendants argue that the Johnson's delay in seeking state relief until his execution loomed near should factor against staying his execution. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) ("[C]apital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death.").

8

attorney representing the state'" must do when a "'motion to set an execution date'" is filed and (2) what happens when "'the convicting court intends to set an execution date . . . on its own motion . . . .'" (Docket Entry No. 1 at 11 n.7) (quoting legislative history). Johnson also argues that only a District Attorney's Office has the authority to represent the State in the convicting court and thus request an execution date. (Docket Entry No. 1 at 12) (relying on Tex. Const. art. V, § 21) ("The County Attorneys shall represent the State in all cases in the District and inferior courts of their respective counties."). Johnson contends that the Attorney General's Office—as a separate government entity with authority derived from different state constitutional law—has no role to play in the process.

Johnson's complaint raises two claims. First, Johnson argues that "[g]iven the actions of the Attorney General's Office prompting the improper issuance of Johnson's execution warrant, allowing the state to proceed with his execution at this time would constitute a violation of the Fourteenth Amendment's Due Process Clause." (Docket Entry No. 1 at 11). Second, Johnson argues that "[a]llowing [his] execution to proceed pursuant to the trial court's January 20, 2025, Order would run afoul of Johnson's right to Equal Protection." (Docket Entry No. 1 at 32). Johnson asks this Court to stay his execution until the convicting court enters an order which complies with the procedure outlined by his complaint.

## STAY OF EXECUTION STANDARD

Johnson's civil rights complaint can only proceed if the Court issues a stay of execution or another form of injunctive relief. A federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); 28 U.S.C. § 2251(a)(1). "[A] stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). In deciding whether to issue

9

a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken*, 556 U.S. at 425-26. When considering these factors, however, federal courts "can and should protect settled state judgments from undue interference by invoking their equitable powers to dismiss or curtail suits that are pursued in a dilatory fashion or based on speculative theories." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken*, 556 U.S. at 433-34.

## JOHNSON'S MOTION FOR A STAY

### I. Likelihood of Success on the Merits

Of the stay-of-execution factors, the likelihood of success is often "the most critical." *Nken*, 556 U.S. at 434. In fact, "[w]here the movant cannot 'present a substantial case on the merits,' the stay of execution must be denied, and the court need not consider additional factors." *Wood v. Patton*, 130 F.4th 516, 520 (5th Cir. 2025) (quoting *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992)). Courts describe the movant's burden as requiring a "strong" or "substantial" likelihood of success. *See In re Garcia*, 756 F. App'x 391, 396 (5th Cir. 2018); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). Johnson has not met that burden.

#### A. Due Process

Johnson summarized his due process claim as challenging "an order based on unlawful authority and improper interference" which "unjustifiably deprives him of his right to a lawful execution order, thereby violating his Due Process rights." (Docket Entry No. 1 at 21). Johnson

10

argues that the Texas Attorney General's Office interaction about available execution dates amounted to "act[ing] beyond its authority and inappropriately interfere[ing] with the constitutional powers of the District Attorney of Dallas County." (Docket Entry No. 1 at 15). Johnson interprets the October 2, 2024 letter as "effectively moving the court to enter an execution order." (Docket Entry No. 1 at 15). Because "the Due Process Clause demands a validly issued execution order," Johnson argues that "[t]his Court should stay [his] imminent execution until [he] has received the Due Process to which he is entitled." (Docket Entry No. 1 at 18). Johnson does not ask for a different result, just a different process.

From the onset, Johnson's arguments are suspect because they do not allege on any direct violation of a statutory provision. Johnson premises his complaint on the argument that "Texas statutory law makes clear that an execution date may only be set by a trial court either sua sponte, or in response to a motion filed by the office which properly represents the State in that proceeding." (Docket Entry No. 1 at 1-2). But the law does not explicitly require a death warrant only to originate with a motion from the County District Attorney's Office or the convicting court itself. Johnson relies on statements found in the legislative history behind the statute. Johnson has not provided any constitutional authority requiring States to follow legislative history, rather than the plain text of a statute. *See United States Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (quotation omitted and cleaned up).

The clear language of the relevant statutes does not specify which state actors may be involved in the process of setting an execution date. The Court does not need to resolve Johnson's arguments relating to whether the Attorney General Office's has authority under the Texas

11

constitution to "represent the State's interest in a state court criminal matter"—the relevant statutes are silent as to which government actors may be involved in the execution-setting context. (Docket Entry No. 13 at 4). Here, the convicting court had broad discretion in how to go about setting an execution date. The convicting court chose to use information provided by the Attorney General's Office. Johnson has not shown any state law or precedent that expressly prohibits the Attorney General's Office from playing some role in that unique procedure, particularly as representative for the state agency which would carry out the execution. Because the Texas courts have not interpreted their own law to bar the Attorney General's Office from providing information as it did here, Johnson's due process claim rests on a weak foundation.

Johnson takes his novel arguments one step further by construing the communications from the Attorney General's Office as "effectively mov[ing] the trial court to issue" a death warrant. (Docket Entry No. 1 at 18). Johnson contends that the letter was not informative, but "sought to facilitate the court's scheduling Plaintiff's execution . . . ." (Docket Entry No. 13 at 4). The letter was not a formal or informal request for a judicial order. The intent behind the letter may or may not have been to begin the execution-setting process. But the October 2, 2024 letter did not require any action by the convicting court. Instead, as described the Defendants, the Attorney General Office's letter "(1) informed the convicting court of the conclusion of federal habeas proceedings, (2) provided dates that its client, TDCJ, was available to conduct the court-ordered execution, and (3) offered to assist in a pro tem capacity if necessary." (Docket Entry No. 11 at 24). The letter fell far short of being a motion.

Because Johnson has not shown any law which bars the Attorney General's Office from providing the convicting court with information, and the Attorney General's Office did not move for an execution date, Johnson's complaint is built on shaky ground.

With those concerns in mind, Johnson has not shown a substantial likelihood of success on the merits of his due process claim. Procedural due process claims are subject to a two-step inquiry. "The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (internal quotation marks omitted). Liberty interests come from two potential sources: (1) "the Constitution itself, by reason of guarantees implicit in the word 'liberty'"; or (2) "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Johnson has not identified any protected liberty interest. Johnson does not precisely define the due process rights which he believes govern execution setting. To the extent that federal courts have examined the constitutional rights at play during the setting of an execution date, an inmate's rights there are not as expansive as at trial. *See Parr*, 245 F. App'x at 366 (finding that the constitution does not require the presence of a condemned inmate or his attorney at the setting of the execution date). Johnson has not pointed to any federal law governing how a State decides when to carry out its lawful judgments. *See Belyeu*, 82 F.3d at 615 ("The setting of the date for execution is not a critical part of the sentencing proceedings, but is rather a ministerial act implementing the judgment earlier entered."). Johnson has not shown that federal law has created a liberty interest in the execution-setting process which the State then violated.

A State may create a liberty interest, but Johnson has not shown that Texas did so in this instance. *See Reed v. Goertz*, 2025 WL 1261412, at *4 (5th Cir. May 1, 2025) (recognizing that "the states, as policymakers, may . . . elect to confer . . . a right in its citizens."). State law has set out some specific requirements for the ministerial act of setting an execution date. Nothing in the explicit provisions of Texas law requires the death warrant originate with a District Attorney's

13

motion or a convicting court's own action. And nothing in the law expressly prevents the Attorney General's Office from providing a convicting court information as it did here. Johnson has not shown that the actions by the Attorney General's Office in this case interfered with a protected liberty interest.[5] Johnson has not shown a substantial likelihood of success on his due process claim.

### B.     Equal Protection

Johnson's equal protection arguments follow two paths. First, Johnson argues that "[t]he Legislature's decision to make district attorneys and district court judges—officials elected at the local level—the sole officers with the authority to initiate the process of setting an execution date has constitutional significance." (Docket Entry No. 1 at 24). Johnson argues that the actions in this case run contrary to what he describes as Dallas County's "evolving view of the death penalty" which "appears to show a growing disapproval of its use." (Docket Entry No. 1 at 30). Second, Johnson contends that he should be treated "the same as those 'similarly situated'" which in this case would be the offenders who had previously been executed pursuant to a death warrant originating with either the District Attorney's Office or the convicting court *sua sponte*. (Docket Entry No. 1 at 28).

"The Equal Protection Clause of the United States Constitution requires that persons similarly situated are treated alike." *Branch v. Harris Cnty. Sheriff's Office*, 2025 WL 636313, at *3 (5th Cir. 2025) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Generally, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v.*

---

[5]     Even assuming that the Attorney General's actions in the execution-setting process violated Texas law, "a mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982)).

*Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Johnson has not identified membership in a protected class. A plaintiff alleging discrimination on grounds other than membership in a protected group may still prevail on an equal protection claim under a "class of one" theory. "[The Supreme Court has] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (internal quotation marks omitted).

Johnson has not alleged that he was singled out and intentionally treated differently from others who are similarly situated. Defendants persuasively argue that Johnson has not shown any discrimination against him or circumstances which have impinged on his fundamental rights. Defendants convincingly demonstrate that the Attorney General's Office had a rational basis for proceeding as it did. As previously discussed, Texas law has set out a process which requires coordination between various state actors and demands precise compliance with established procedure. The process of planning and carrying out an execution raises numerous concerns—from the availability of lethal-injection drugs to logistical questions about transportation of the condemned inmate—for which information from the executing agency could be useful. Defendants persuasively argue: "Executions require TDCJ personnel and resources, and certain dates may conflict with previously scheduled executions (or executions in the process of being scheduled)." (Docket Entry No. 11 at 18). Input from those tasked with carrying out an execution is hardly surprising. Johnson has not made a strong showing that his equal protection rights have been violated.

The Court finds that Johnson has not shown a likelihood that he will succeed on the merits of his two claims.

## II.    Remaining *Nken* Factors

Johnson's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019).  The remaining three *Nken* factors do not tip the scales in Johnson's favor.  Generally, "the possibility of irreparable injury weighs heavily in the movant's favor" in a capital case.  *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982).  Nevertheless, the United States Supreme Court has ruled that an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted).  The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)).  Granting of a stay would harm the Defendants by disallowing the execution of an otherwise-valid judgment against Johnson in a timely manner.  Finally, the public has an "in timely enforcement of the death sentence." *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).

The Court, therefore, finds that Johnson has not met his burden of showing that the circumstances require a stay of his execution. [6]

## DISMISSAL

Given the rapidly approaching execution date, this case cannot proceed without a stay of

---

[6]    Defendants argue that Johnson's complaint amounts to a request for a writ of mandamus ordering Texas state officials to comply with how he interprets state law. Defendants also argue that dismissal is appropriate under the *Rooker-Feldman* doctrine which prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). With the holding on Johnson's motion for a stay of execution, the Court does not need to reach those arguments.

execution or other form of injunctive relief. The Fifth Circuit has affirmed the dismissal of cases with prejudice in similar circumstances. *See Young v. Gutierrez*, 895 F.3d 829, 832 (5th Cir. 2018); *Bible v. Davis*, 739 F. App'x 776, 773 (5th Cir. 2018); *White v Johnson*, 429 F.3d 572, 573-74 (5th Cir. 2005). The Court will dismiss this case with prejudice.

## CONCLUSION

For the reasons described above, the Court **denies** Johnson's motion for a stay of execution. Because this lawsuit cannot proceed without a stay of Jones' execution date, this case is **dismissed with prejudice**.

Both parties have submitted motions to file briefing which exceeds the Court's page limits. (Docket Entry Nos. 10, 12). The Court **grants** both motions. All other requests for relief are summarily denied.

The Clerk will provide copies of this Order to the parties.

SIGNED on May 13, 2025, at Houston, Texas

_____
ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE